DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal of a ruling by the Lucas County Court of Common Pleas denying a motion for a stay pending arbitration. For the reasons that follow, we affirm the trial court's ruling.
 {¶ 2} On February 23, 2006, appellee, ProMedica Health System, Inc. ("PHS"), commenced this action seeking dissolution of a not-for-profit corporation known as BVPH Ventures, Inc. ("JV"). JV is equally owned by PHS and defendant-appellant Blanchard Valley Health Association ("BVHA"). PHS seeks the dissolution pursuant to R.C. 1702.52(A)(4), on grounds that there is a deadlock in the management of JV's corporate affairs.
 {¶ 3} On May 5, 2006, BVHA moved to stay the proceedings in this action pending the completion of arbitration in another case, Blanchard Valley Health Assn. v. ProMedica Health System,
Hancock County Court of Common Pleas Case No. CV060-0010. According to BVHA, the stay was appropriately requested because some of the disputes that were presented in the Hancock County case were also presented in the Lucas County case.
 {¶ 4} Both the instant case and the Hancock County case arise from a 1999 affiliation between PHS, BVHA, and Lima Memorial Hospital ("LMH"). The affiliation arose after LMH approached PHS and BVHA with a business proposal pursuant to which PHS and BVHA would assist LMH in solving its financial problems, and, in exchange for this assistance, would undertake joint management of LMH's hospital facilities. To effect this affiliation, BVHA and PHS joined together and formed JV. JV then joined with LMH to form the Lima Memorial Hospital Joint Operating Company ("JOC").
 {¶ 5} Stated generally, the relationships between the five involved corporations are as follows: 1) BVHA and PHS jointly own JV; 2) JV and LMH jointly own JOC; and 3) JOC operates the hospital facilities for the parties.
 {¶ 6} Schematically, this affiliation can be diagrammed as follows:

 {¶ 7} The affiliation was documented in four written agreements between the parties: 1) The "Joint Venture Agreement" between BVHA and PHS, which sets forth agreements regarding the joint ownership and operation of JV; 2) The "Affiliation Agreement" between BVHA, PHS, JV, and LMH, which sets forth the structure and capitalization for the affiliation; 3) The "Joint Operating Agreement" between BVHA, PHS, JV, LMH, and JOC, which sets forth agreements regarding management of the LMH hospital facilities; and 4) The "Separation Agreement" between JV and LMH, which sets forth the circumstances under which the affiliation can be terminated.
 {¶ 8} On November 17, 2005, LMH sent a letter offering to purchase JV's ownership interest in JOC. PHS responded, stating that it was in favor of JV accepting LMH's offer. PHS proposed to dissolve JV and then have LMH buy out PHS's interest in the dissolved corporation. On December 12, 2005, LMH sent a second letter, this time offering that in the event of JV's dissolution, LMH would buy out the individual interests of PHS and BVHA in the dissolved corporation.
 {¶ 9} On January 5, 2006, BVHA commenced the action in the Hancock County Court of Common Pleas against PHS and LMH for declaratory and injunctive relief and damages. BVHA's complaint specifically sought to enjoin PHS from taking any steps to dissolve JV. In its effort to obtain this relief, BVHA asserted two basic arguments: the first challenged the validity of the offer LMH had made to purchase the interest of BVPH in the JOC, and the second sought a declaration that a Joint Venture Agreement provision which purported to allow unilateral dissolution of JV by either member was not legally enforceable by PHS under JV's corporate governance documents or under the Ohio nonprofit corporation statute. Significantly, the latter claim by BVHA related solely to whether PHS has a contractual right
under the Joint Venture Agreement to unilaterally voluntarilydissolve BVPH.[1]
 {¶ 10} On January 13, 2006, PHS responded by filing a "demand for arbitration" in which PHS asserted that all of the claims and controversies raised in BVHA's complaint are subject to arbitration under the Joint Operating Agreement. At the same time, PHS also filed a motion with the Hancock County court to stay all court proceedings pending the outcome of the demanded arbitration.
 {¶ 11} In an amended complaint, filed on March 13, 2006, BVHA added a claim for specific performance wherein it sought to compel the sale of PHS's interest in JV to BVHA pursuant to provisions set forth in the Separation Agreement and the Joint Venture Agreement. Specifically, BVHA asserts in its new claim that PHS's stated desire to accept LMH's offer to buy out JV's interests in JOC triggers a separation from LMH under the Separation Agreement, and that this separation, together with BVHA's stated desire to decline LMH's offer, triggers a "buy out" right for BVHA under the Joint Venture Agreement.
 {¶ 12} On March 17, 2006, the Hancock County court granted a stay pending arbitration, concluding that "the claims of BVHA fall within the ambit of the arbitration clause, except as specifically excluded as being in the Separation Agreement."[2]
 {¶ 13} During the same period that PHS was seeking an arbitration order in the Hancock County case, PHS filed the instant case in Lucas County seeking "judicial dissolution" pursuant to R.C. 1702.52(A)(4). On May 15, 2006, the trial court summarily denied BVHA's May 5, 2006 motion to stay. The next day, BVHA filed the instant appeal of that denial, raising the following as its sole assignment of error:
 {¶ 14} "THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION, WHEN ANOTHER COURT, THE COURT OF COMMON PLEAS OF HANCOCK COUNTY, OHIO, IN AN ACTION BETWEEN THESE SAME PARTIES, HAS ALREADY RULED THAT ALL DISPUTES BETWEEN THESE PARTIES ARE SUBJECT TO ARBITRATION, AND SOME OF THESE SAME DISPUTES ARE PRESENTED IN THE INSTANT CASE."
 {¶ 15} The standard of review for a decision on a motion to stay proceedings pending arbitration is abuse of discretion.Buyer v. Long, 6th Dist. No. F-05-012, 2006-Ohio-472, at ¶ 6-7;Panzica Construction Co. v. GRE Ins. Group, 8th Dist. No. 79931, 2002-Ohio-2023, at ¶ 12. An abuse of discretion suggests more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} R.C. 2711.02(B) provides for the issuance of a stay of trial pending arbitration, and pertinently states:
 {¶ 17} "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement * * *."
 {¶ 18} Thus, pursuant to the express terms of R.C.2711.02(B), the issues presented in this case must be shown to be referable to arbitration under a written agreement. As indicated above, PHS seeks in this case judicial dissolution of JV pursuant to R.C. 1702.52(A)(4). R.C. 1705.52(A)(4) relevantly provides that a corporation may be dissolved judicially and its affairs wound up:
 {¶ 19} "(4) By an order of the court of common pleas of the county in this state in which the corporation has its principal office, in an action brought by one-half of the directors when there is an even number of directors or by one-half of the voting members, when it is established that the corporation has an even number of directors who are deadlocked in the management of the corporate affairs and the voting members are unable to break the deadlock * * *."
 {¶ 20} In the instant case, the only disputed issue is whether PHS and BVHA are deadlocked, for purposes of R.C.1702.52, in the management of the corporate affairs of JV. BVHA, in making its request for a stay, made absolutely no showing that this particular issue is referable to arbitration. Instead, it based its request on a claim that the Hancock County arbitration decision was res judicata and, as a result, compelled the issuance of the stay in Lucas County with respect to four specific issues that the Hancock County court "* * * [had] already determined to be `referable to arbitration.'" On appeal, BVHA raises each of those issues, plus a fifth. Our analysis will address the applicability of the doctrine of res judicata to each of those issues within the context of this case.
 {¶ 21} "The doctrine of res judicata involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)."Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381. Issue preclusion, or collateral estoppel, "precludes the relitigation of an issue that has been `actually and necessarily litigated and determined in a prior action.'" Fort Frye Teachers Assn. v.S.E.R.B., 102 Ohio St.3d 283, 2004-Ohio-2947, at ¶ 10, citingKrahn v. Kinney (1989), 43 Ohio St.3d 103, 107, quotingGoodson v. McDonough Power Equip., Inc. (1983),2 Ohio St.3d 193, 195. Thus, the question for our determination herein is whether the issues addressed in the Hancock County arbitration decision "actually" or "necessarily" determined the issue raised in the Lucas County action, thereby precluding the Lucas County court's denial of the stay pending arbitration.
 {¶ 22} The first of the four original issues to which BVHA refers concerns whether PHS can dissolve JV. We are reminded at the outset that at no point in the Hancock County proceedings did any party demand arbitration of any issues other than those presented in BVHA's original complaint. Accordingly, we find that only those matters set forth in the original complaint, and not any that may have been added in the amended complaint, are subject to the Hancock County arbitration order.
 {¶ 23} BVHA's original complaint in the Hancock County action raises but one issue regarding the dissolution of JV: whether the Joint Venture Agreement provision that purports to allow unilateral dissolution of JV by either member is legally enforceable under JV's corporate governance documents or under Ohio's nonprofit corporation statute. Arguing that it does not, BVHA seeks a declaration that "under JV's corporate governance documents, PHS cannot unilaterally dissolve JV, and that anyvoluntary dissolution of JV requires the consent of both PHS and BVHA." (Emphasis added.)
 {¶ 24} The case currently before us does not involve PHS's contractual rights at all. Instead, PHS is asking the court to order a judicial dissolution of BVPH pursuant to R.C.1702.52(A)(4) on the grounds that there exists a management deadlock. Thus, PHS seeks enforcement of a statutory right that exists apart from the parties' negotiated contract rights. PHS's right to obtain a court-ordered judicial dissolution of JV has never been an issue in the Hancock County action. In fact, the Hancock County court expressly found in its arbitration decision that "BVHA's action has no basis but the written agreements." (Emphasis added.) Moreover, the facts and legal issues pertinent to whether PHS has a contractual right to voluntarilydissolve JV are totally independent of the facts and legal issues relevant to determining whether the court may order thejudicial dissolution of JV under R.C. 1702.52(A)(4).
 {¶ 25} Based on all of the foregoing, we find that the question of whether a non-contractual action for judicial dissolution based on a management deadlock falls within the scope of the Joint Operating Agreement arbitration provision was not before the Hancock County court, was never actually or necessarily decided, and, thus, was not res judicata.
 {¶ 26} The second issue to which BVHA refers is whether there is a "deadlock" between PHS and BVHA regarding whether or not JV should accept LMH's offer to buy JV's interest in JOC. To the extent that BVHA pled a "deadlock" in the Hancock County action, it did so only as a prerequisite to bringing a derivative claim. It was not pleaded in support of any substantive claim. Moreover, the allegation that a deadlock exists is not in dispute. Rather, the only question presented in this action is whether the deadlock that all sides agree exists goes to the management of the corporate affairs of JV. This is clearly not the issue presented by BVHA's allegations of deadlock in the original Hancock County complaint — which is simply whether the prerequisites for a derivative action under Civ.R. 23.1 are met. Accordingly, there is no basis upon which to conclude that resjudicata applies.
 {¶ 27} The next issue to which BVHA refers is whether JV can accept LMH's buy-out offer. According to BVHA, the Hancock County arbitration decision has a preclusive effect because PHS includes in its prayer for relief a request that, after an order of judicial dissolution is entered, the court enter a further order under R.C. 1702.52(D) directing that the affairs of the joint venture be wound up by the acceptance of LMH's offer to the joint venture. It is BVHA's contention that this prayer presents the same issue that BVHA presented in the Hancock County action when it challenged the legality of LMH's offer. We are unpersuaded by this argument. First, we note that this argument was not among the four issues presented in the trial court. In failing to present this argument to the trial court, BVHA waived its right to present it on appeal. See Wilson v. Murch, 9th Dist. App. No. 05CA0046, 2006-Ohio-1491, at ¶ 9.
 {¶ 28} Further, PHS's prayer does not present the same issue concerning the LMH offer as was found referable to arbitration by the Hancock County arbitration decision. PHS's prayer in this action asks the Lucas County court to exercise its exclusive jurisdiction over the wind-up and liquidation of the affairs of a corporation that it has dissolved. By contrast, the issue presented by BVHA's Hancock County complaint is whether consummation of LHM's November 17, 2005 offer without an acceptance by BVPH would violate contractual rights of JV. The doctrine of res judicata clearly does not apply to that aspect of PHS's prayer for relief which seeks acceptance of LMH's offer.
 {¶ 29} BVHA next refers to the issue of whether under the Joint Venture Agreement between PHS and BVHA, PHS is required to sell its interest in JV to BVHA. According to BVHA, if the answer is yes, then there is no "deadlock" between PHS and BVHA.
 {¶ 30} Unfortunately for BVHA, this issue was never addressed in the original Hancock County complaint. As indicated above, both PHS and LMH demanded arbitration only of those claims set forth in BVHA's verified complaint, filed January 5, 2006. BVHA's claim respecting the effect of LMH's offer to JV under the Separation Agreement — to wit, that the offer extended to JV by LMH is a separation event under the Separation Agreement that subsequently triggers a buy-out right for BVHA under the Joint Venture Agreement — was not included in that verified complaint. Rather, it was added by an amended complaint filed on March 13, 2006. As a result, it is not within the scope of any demand for arbitration. Accordingly, the arbitration decision merely stayed BVHA's claim for specific performance of its buy-out right. It did not find a claim for which no arbitration demand had been made referable to arbitration.
 {¶ 31} Moreover, the Hancock county court specifically found in its decision that "the claims of BVHA fall within the ambit of the arbitration clause, except as specifically excluded as beingin the Separation Agreement." (Emphasis added.) Although the trial court did not specifically identify which BVHA claims fall within the exception pertaining to the Separation Agreement, it is clear from BVHA's amended complaint that its claim for specific performance of its buy-out right is pleaded under the Separation Agreement. That claim is, therefore, excluded from arbitration under the arbitration decision. Thus, the Hancock County arbitration decision provides no basis for staying this action.
 {¶ 32} Finally, BVHA refers to the issue of whether PHS's action can be maintained without reference to the contracts between the parties. The Supreme Court of Ohio in Academy ofMedicine of Cincinnati v. Aetna Health, Inc.,108 Ohio St.3d 185, 2006-Ohio-657, has stated that the test for determining whether an issue is subject to arbitration is "whether the action could be maintained without reference to the contract or relationship at issue." Id. at ¶ 30. As we have repeatedly indicated, the statutory right to dissolution in this case is entirely dependent upon the question of whether there exists a deadlock in the management of the joint venture's corporate affairs. This question, and thus, the entirety of PHS's claim for judicial dissolution, can certainly be adjudicated apart from, and without reference to, any contracts.
 {¶ 33} For all of the foregoing reasons, we find that the Hancock County arbitration decision did not "actually" or "necessarily" determine the issue raised in the Lucas County action, and, therefore, did not preclude the Lucas County court's denial of the stay pending arbitration.
 {¶ 34} As the order denying the stay was neither arbitrary, unreasonable, nor unconscionable, appellant's single assignment of error is found not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed.[3]
Defendant-appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Skow, J. Concur.
[1] PHS correctly points out that at no time did any party demand arbitration of any issues other than those presented in BVHA's original complaint.
[2] In ruling on the motion for a stay pending arbitration, the Hancock County court agreed with BVHA's assertion that because PHS was not a JOC Member, it was not a proper party to invoke the arbitration clause. Nevertheless, because LMH had joined in the initial demand for arbitration, and was, undisputedly, a JOC member, the court concluded that the matter of PHS's invocation of the arbitration clause was moot.
[3] In light of this decision, we find that the motion of BVHA to supplement the record is moot and, therefore, is denied.