[Cite as *Meyers v. Marks*, 2011-Ohio-3523.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### HENRY COUNTY

WILLIAM R. MEYERS,

    PLAINTIFF-APPELLANT,

    -and-                             CASE NO.  7-10-13

W R MEYERS CO INC.,

    PLAINTIFF-APPELLEE,

    v.                                 **O P I N I O N**

JERRY A. MARKS, ET AL.,

    DEFENDANTS-APPELLEES.

---

**Appeal from Henry County Common Pleas Court**
**Trial Court No. 09 CV 0186**

**Judgment Affirmed**

**Date of Decision:   July 18, 2011**

---

APPEARANCES:

    *George C. Rogers*  for Appellant

    *Thomas P. Killam*  for Appellees, Jerry A. Marks and Southpoint
    Business Park, LLC

**ROGERS, P.J.**

{¶1} Plaintiff-Appellant, William Meyers, appeals from the judgment of the Court of Common Pleas of Henry County ordering specific issues within the case to arbitration. Meyers contends that the trial court erred in ordering the parties to arbitration, that the trial court erred in ordering arbitration of the claim that Defendant-Appellee, Jerry Marks,[1] had acquired membership rights in the limited liability company, and that the trial court erred in denying his motion for leave to dismiss the amended complaint. Based on the following, we affirm the judgment of the trial court.

{¶2} In 2001, Meyers, Marks, and David Roberts entered into an operating agreement ("Agreement") for Southpoint Business Park ("Southpoint"), an Ohio limited liability company.[2] Under this Agreement, Meyers, Marks, and Roberts each had a thirty-three and one-third percent interest in Southpoint. Agreement, p. 10. In 2006, the Agreement was amended ("Amended Agreement") to reflect that Meyers and Marks purchased Roberts' membership interest in Southpoint.[3] Consequently, Meyers and Marks each have fifty percent interest in Southpoint. Amended Agreement, pp. 3-4.

---

[1] Jerry Marks is also referred to as Tony.
[2] Prior to being named Southpoint, the company was originally known as R & T Leasing, LLC and MRT Leasing, LLC.
[3] Although the Amended Agreement contained other changes to the original Agreement, none of those changes are pertinent to the disposition of this case.

{¶3} In July 2009, Meyers filed a complaint ("original complaint") for judicial dissolution of Southpoint. Meyers' original complaint, in pertinent part, alleged that Marks:

> **[C]ommitted acts that have not been in the best interest of [Southpoint], * * * has failed to account for [Southpoint] funds, has failed and refused to provide [Southpoint's] contract and financial records, has failed and refused to inform William R. Meyers regarding [Southpoint] business decisions * * * has failed and refused to pay his capitol (sic) contribution for his share of [Southpoint].**

Meyers' Original Complaint, p. 3. As a result of Marks' alleged failures, Meyers alleged that it was no longer reasonably practical to carry on the business of Southpoint and requested judicial dissolution of Southpoint. Meyers also alleged that Marks was not a member of Southpoint because he had not paid any portion of his initial capital contribution. In addition to requesting judicial dissolution of Southpoint, Meyers requested that a receiver be appointed to Southpoint to manage its affairs and prepare it for dissolution.

{¶4} In September 2009, Marks filed a motion to stay the proceedings and compel mediation and, if needed, arbitration. Marks argued that the claims asserted in Meyers' complaint arise under or by reason of the Agreement and must, pursuant to provision 9.17 of the Agreement, be resolved via mediation and, if needed, arbitration. Provision 9.17 of the Agreement states in pertinent part:

> **With respect to any controversy or claim arising under or by reason of this Agreement or the breach of it, the parties first shall submit the same to mediation with a qualified mediator selected by their mutual agreement. If such controversy or claim cannot be settled by mediation, the same shall be settled by binding arbitration as set forth in the Ohio Revised Code. * * ***

Agreement, pp. 35-36.

{¶5} In response to Marks' motion to stay the proceedings and compel mediation and arbitration, Meyers filed a motion in opposition arguing, in pertinent part, that judicial dissolution of a limited liability company is not arbitrable, as the Revised Code limits authority to dissolve a limited liability company to the court of common pleas. Meyers further argued that determination of whether Marks is a member of Southpoint is not arbitrable, and requested the trial court to retain jurisdiction to determine the parties' respective rights in Southpoint.

{¶6} In response to Meyers' motion in opposition, Marks argued, in pertinent part, that dissolution is arbitrable, due to the breadth of the Agreement's arbitration provision. Marks further argued that the declaratory judgment Meyers sought concerning the parties' rights in Southpoint presents an arbitrable issue.

{¶7} In response to Marks' responsive motion, Meyers, in pertinent part, reasserted his argument that the trial court retains exclusive jurisdiction to

judicially dissolve a limited liability company. Specifically, Meyers referred to the Agreement's dissolution provision, which states:

> **7.1 Events of Dissolution: The Company shall be dissolved upon the happening of any of the following events:**
>
> **7.1.1. Upon the unanimous written agreement of the Members; or**
>
> **7.1.2 Upon the occurrence of a Permitted Voluntary Withdrawal, a Transfer or an Involuntary Withdrawal * * ***

Agreement, pp. 28-29. In light of this provision, Meyers argued that if he had sought dissolution in response to either event anticipated in the Agreement, then arbitration would be proper. Since, however, Meyers is not seeking judicial dissolution for either of the events anticipated in the Agreement, he argued that the trial court is exclusively vested with jurisdiction to dissolve Southpoint.

{¶8} Subsequently, Meyers filed a motion to appoint a receiver, which Marks opposed via motion.

{¶9} In November 2009, Meyers filed an amended complaint ("amended complaint") which realleged that it was not reasonably practical to carry on the business of Southpoint, and requested judicial dissolution of Southpoint. Specifically, Meyers alleged that it was not reasonably practical to carry on the business of Southpoint due to deadlock in Southpoint's management. Meyers also reasserted his request that the trial court appoint a receiver to Southpoint.

{¶10} On February 2, 2010, the trial court filed an order addressing Meyers' motion to appoint a receiver and Marks' motion to stay proceedings and to compel mediation. The trial court granted Meyers' motion to appoint a receiver. The trial court also granted Marks' motion to stay the proceedings and compel mediation, stating in pertinent part:

> **Defendants' Motion to Stay Proceedings is granted. Except for the issue of judicial dissolution of [Southpoint], the remaining claims in Plaintiff's Amended Complaint shall be referred for mediation to the Court's Magistrate * * *. This Court reserves jurisdiction on the issue of judicial dissolution.**

February 2, 2010, Order[4], pp. 3-4. The trial court further stated that the parties were permitted to conduct discovery during the stay in order to facilitate mediation.

{¶11} Subsequently, Marks filed a motion to authorize the receiver to sell Southpoint's assets. Marks acknowledged that he and Meyers no longer wished to do business together. Meyers filed a motion concurring with Marks' motion authorizing the receiver to sell Southpoint's assets. Subsequently, the trial court granted Marks' motion to authorize the receiver to sell Southpoint's assets.

{¶12} In April 2010, Meyers filed a motion entitled "Plaintiff's Motion for Declaration that Defendant Tony Marks has No 'Membership Rights' in

---

[4] Although the trial court captioned many of its orders as judgment entries and the parties persist in referring to them as such, most are interlocutory orders and should not be captioned *judgment entry*. A judgment is a final or appealable order. See Civ.R. 54(A).

Southpoint Business Park LLC, Having Never Made Nor Delivered to the Company His Initial Capital Contribution"[5] arguing that Marks had no membership rights in Southpoint, because he never paid his initial capital contributions to Southpoint. The provision setting forth Marks' initial capital contributions reads, in pertinent part:

> **3.2 Initial Capital Contributions. Upon the execution of this Agreement, the Members shall contribute to the Company their respective Capital Contributions in the amounts set forth in Paragraph 3.1 above in the following manner:**
>
> **3.2.1 Tony shall execute and deliver to the Company his negotiable promissory note payable to the order of the Company in the amount of $100,000 * * *. Tony also shall contribute to the Company the rights and benefits of a certain Warehousing Agreement with Silgan Can Company, a Delaware corporation, which contribution the Members agree has a fair market value of One Hundred Thousand Dollars ($100,000).**
>
> **\* \* \***
>
> **When a Member's Initial Capital Contribution has been made and delivered to the Company, his Membership Rights in the Company shall be deemed fully paid and non-assessable.**

Meyers, in support of his contention that Marks had not paid his initial capital contributions, cited to Marks' interrogatory responses. The interrogatories and responses read, in pertinent part:

> **Interrogatory No. 10. Provide a copy of the $100,000 note executing (sic) Mr. Marks, as part of his capital contribution in**

---

[5] Although not captioned as such, we interpret Meyers' foregoing motion as a motion for partial summary judgment, and will refer to it as such for the remainder of this opinion.

> **[Southpoint].** **Please include a copy of all checks or other evidence of these monthly payments made upon any such note over the last seven years.**
>
> **Response: There is no such note. As to the remainder of the request, see responsive documents produced on October 23 and 27, 2009.**
>
> **Interrogatory No. 11. Please provide a copy of the assignment of any rights and interest in the Silgan lease to [Southpoint] and a deemed $100,000 contribution by Mr. Marks for his capital contribution to [Southpoint].**
>
> **Response: There is no such written assignment of rights and interest.**

Defendant's Responses to Plaintiff's Interrogatories, p. 8. Construing Marks' responses with the Agreement, Meyers argued that Marks had no membership rights in Southpoint, because such rights could only have been obtained had Marks paid his initial capital contributions. Accordingly, Meyers argued that without membership rights Marks could not participate in the management of Southpoint.

{¶13} In May 2010, Marks filed a motion in opposition to partial summary judgment. Marks argued that he consented to dissolution of Southpoint rendering Meyers' motion for partial summary judgment moot, that he had paid his initial capital contributions, and that Meyers was equitably estopped from denying him membership interest in Southpoint. With regard to his initial capital contributions, Marks acknowledged that he did not execute a promissory note ("Promissory Note") in the amount of $100,000 to Southpoint, nor did he execute a written

assignment of the warehousing agreement with Silgan Can Company ("Warehousing Agreement"). Marks, however, argued that a note receivable, in the amount of $100,000, was booked as an asset of Southpoint, and has been paid in full. In support, Marks cited his affidavit and Southpoint's general ledger. As to the Warehousing Agreement, Marks argued that he orally assigned his rights in the Warehousing Agreement, and that such assignment, although oral, was valid via the doctrine of part performance.

{¶14} In response to Marks' motion in opposition to partial summary judgment, Meyers argued that any evidence, other than the written assignment of the Promissory Note and Warehousing Agreement, is barred under the parol evidence rule. Meyers also argued that the Warehousing Agreement, because it would, by the terms of the Agreement, take longer than a year to complete, could not be orally transferred, because it would violate the statute of frauds. Meyers further argued that part or full performance of an oral assignment does not act as an exception to the statute of frauds.

{¶15} On June 10, 2010, the trial court filed an order deferring ruling on Meyers' partial motion for summary judgment pending mediation.

{¶16} In that same month, Meyers filed a motion for leave to dismiss the amended complaint. Meyers stated that he could no longer assert the existence of a deadlock between himself and Marks, as Marks, due to his alleged failure to pay

his initial capital contributions, had no membership rights. Consequently, Meyers concluded that he was the sole member of Southpoint.

{¶17} In response to Meyers' motion for leave to dismiss the amended complaint, Marks argued that dismissal is prohibited pursuant to Civ.R. 66, because the trial court appointed a receiver.

{¶18} On September 17, 2010, the trial court filed its judgment entry ordering the parties to arbitration. That entry also contained an order denying Meyers' motion for leave to dismiss. The trial court stated, in pertinent part:

> **Upon consideration thereof, the Court finds Plaintiff's Notice of Dismissal to be without effect as Civil Rule 66 requires a Court Order to dismiss a case in which a receiver has been appointed. Plaintiff's Motion for Leave of Court to Dismiss is DENIED. * * ***
>
> **The Court further finds that the parties desire to waive mediation and to proceed directly to arbitration of the issues in this case. The parties are therefore directed to proceed with arbitration of the issues in this case to include, but not limited to:**
>
> **1. The merits of Plaintiff, William R. Meyers's (sic) claim that Defendant Marks has no membership rights in [Southpoint]; and**
> **2. The parties consent to dissolution of the LLC.**

{¶19} It is from this judgment Meyers appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY OF FEB. 8, 2010, IN ORDERING THE COMPLAINT FOR JUDICIAL DISSOLUTION OVER WHICH IT HAD PREVIOUSLY RESERVED JURISDICTION, TO ARBITRATION.[6]**

*Assignment of Error No. II*

**THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY OF FEB. 8, 2010 IN ORDERING THE ARBITRATION OF THE CLAIM THAT TONY MARKS HAD ACQUIRED NO MEMBERSHIP RIGHTS WHICH INCLUDES THE RIGHT TO PARTICIPATE IN THE MANAGEMENT IN SOUTHPOINT BUSINESS PARK, LLC.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED IN ITS JUDGMENT ENTRY OF SEPT. 27, 2010, DENYING PLAINTIFFS' (SIC) MOTION FOR LEAVE TO DISMISS HIS COMPLAINT FOR JUDICIAL DISSOLUTION.[7]**

{¶20} Due to the nature of the arguments raised by both parties, we will first address whether the September 17, 2010 judgment entry ("September Judgment Entry") is a final appealable order. In addressing whether the September Judgment Entry is a final appealable order we will address Meyers'

---

[6] We note that the record contains no judgment entries dated February 8, 2010. Rather, we believe Meyers is referring to the trial court's September 17, 2010 judgment entry ordering arbitration, thus we will address it as such. The same error appears in Meyers' second assignment of error.

[7] We note that the record contains no judgment entries dated September 27, 2010. Rather, we believe Meyers is referring to the trial court's September 17, 2010 judgment entry denying his motion for leave to dismiss the amended complaint, thus we will address it as such.

third assignment of error. Thereafter, we will address Meyers' first and second assignments of error together.

*Final Appealable Orders*

{¶21} In addressing whether the September Judgment Entry is a final appealable order we note that the trial court's judgment contains two separate and distinct orders. The first order denies Meyers' motion for leave to dismiss the amended complaint. The second order refers two specific issues to arbitration.

{¶22} In his third assignment of error, Meyers argues that the trial court erred in denying his motion for leave to dismiss the amended complaint. Marks argues that the denial of Meyers' motion for leave is not a final appealable order. We agree.

{¶23} "An order is a final order * * * when * * * [that] order * * * affects a substantial right made in a special proceeding * * *." R.C. 2505.02(B)(2). We begin by noting that cases dealing with judicial dissolution are special proceedings. See *Tilberry v. Body* (1986), 24 Ohio St.3d 117, 121. A substantial right "means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). Here, the substantial right is arguably Civ.R.

41(A)(1)[8], a rule of procedure, which provides, in pertinent part: "* * * [A] plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant * * *." However, a plaintiff's ability to voluntarily dismiss the complaint is "subject to * * * Civ.R. 66 * * *." Civ.R. 41(A)(1). Civ.R. 66 reads:

> **An action wherein a receiver has been appointed shall not be dismissed except by order of the court. Receiverships shall be administered in the manner provided by law and as provided by rules of court.**

Civ.R. 66. Considering the foregoing language, we find that a plaintiff does not have a "substantial right" to dismiss an action wherein a receiver has been appointed, because such a dismissal requires an order of the court. Consequently, the trial court's order denying Meyers' motion for leave to dismiss the amended complaint is not a final appealable order, pursuant to R.C. 2505.02(B)(2). Thus, we are without jurisdiction to review the merits of Meyers' third assignment of error.

{¶24} Accordingly, Meyers' third assignment of error is overruled.

{¶25} We now turn to the trial court's order referring the parties to arbitration. Marks argues that the order is not a final appealable order. Specifically, Marks argues that the order merely clarified the trial court's February

---

[8] Meyers initially filed a notice of dismissal of the amended complaint, purportedly pursuant to Civ.R. 41(A)(1). However, Marks responded by filing a memorandum in opposition to the voluntary dismissal, alleging that Civ.R. 66 precluded dismissal without an order from the court. Thereafter, Meyers moved for leave to dismiss.

2, 2010 order ("February order"), which stayed the proceedings pending mediation. Consequently, Marks argues that the February order, not the September Judgment Entry, should have been appealed. We disagree.

{¶26} A trial court's decision to grant or deny a motion to stay pending arbitration is a final appealable order. R.C. 2711.02(C). The February order made reference to mediation, not arbitration. Although the September Judgment Entry does appear to clarify the issues referred to mediation, this fact is immaterial in determining whether the order within the September Judgment Entry ordering arbitration was a final appealable order. The order within the September Judgment Entry referring specific issues to arbitration was the first instance where the parties were ordered to arbitrate, thus it was a final appealable order, pursuant to R.C. 2711.02(C), and is properly before this Court.

*Assignments of Error Nos. I & II*

{¶27} In his first and second assignments of error, Meyers argues that judicial dissolution is not arbitrable, that the court must refer to the Revised Code, rather than the Agreement, to determine whether deadlock exists, that there are no disputed issues of fact, and that any evidence proffered by Marks in relation to his initial capital contributions is barred by the parol evidence rule and the statue of frauds. We disagree.

-14-

**{¶28}** In *Council of Smaller Ent. v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, the Supreme Court of Ohio discussed the role of the court in determining the arbitrability of a dispute, stating:

> **"'[T]he question of arbitrability - whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance - is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'"**

*Council of Smaller Ents.,* 80 Ohio St.3d, at 666, quoting *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 649, 106 S.Ct. 1415, 1418. Accordingly, a trial court's determination concerning the arbitrability of a particular issue is reviewed de novo. *McManus v. Eicher,* 2d Dist. No. 2003-CA-30, 2003-Ohio-6669, ¶11, citing *Gaffney v. Powell* (1995), 107 Ohio App.3d 315, 319.

**{¶29}** Ohio case law strongly supports the arbitration of disputes. *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471, 1998-Ohio-294. Arbitration clauses are "valid, irrevocable, and enforceable." R.C. 2711.01(A). When a contract contains an arbitration provision, there is a presumption of arbitrability. *Academy of Medicine of Cincinnati v. Aetna Health, Inc.,* 108 Ohio St.3d 185, 2006-Ohio-657, ¶14.

**{¶30}** Since Southpoint's Agreement contains an arbitration provision there is a presumption of arbitrability. *Academy of Medicine of Cincinnati*, 2006-Ohio-657, at ¶14. The arbitration provision provides, in pertinent part:

> **With respect to any controversy or claim arising under or by reason of this Agreement or the breach of it, the parties first shall submit the same to mediation with a qualified mediator selected by their mutual agreement. If such controversy or claim cannot be settled by mediation, the same shall be settled by binding arbitration as set forth in the Ohio Revised Code. * * ***

Agreement, pp. 35-36. The Ohio Supreme Court has held that the phrase "any claim or controversy arising out of the agreement" is the paradigm of a broad arbitration provision. *Alexander v. Wells Fargo Fin. Ohio 1 Inc.,* 122 Ohio St.3d 341, 2009-Ohio-2962, ¶13, quoting *Academy of Medicine of Cincinnati,* 2006-Ohio-657, at ¶14. Such a provision must be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. Any doubts as to coverage should be resolved in favor of coverage. *Academy of Medicine of Cincinnati,* 2006-Ohio-657, at ¶14, quoting *AT & T Technologies, Inc.*, 475 U.S. at 650.

**{¶31}** Turning to Meyers' first contention, Meyers argues that the trial court erred when it ordered the issue of judicial dissolution to arbitration. In support of his contention, Meyers cites *Promedica Health Sys., Inc. v. Blanchard Valley Health Assn., et al.*, 6th Dist. L-06-1163, 2006-Ohio-6185. In *Promedica*,

-16-

Promedica Health Systems ("PHS") filed a complaint seeking judicial dissolution, pursuant to R.C. 1702.52(A)(4), of a joint venture ("JV") it had entered into with Blanchard Valley Health Association ("BVHA") on grounds that there was deadlock in the management of the JV. BVHA filed a motion to stay the proceedings and order arbitration of PHS's complaint for judicial dissolution, but the trial court denied the motion. BVHA appealed arguing that the trial court erred when it denied its motion to stay the proceedings. On appeal, the court found that the only dispute was whether PHS and BVHA were deadlocked in the management of the JV. *Promedica Health Sys.*, 2006-Ohio-6185, at ¶20. The court also found that BVHA made absolutely no showing that the issue presented in PHS's complaint was referable to arbitration, or that the case involved any contractual rights. Id. at ¶¶20, 24. In light of these findings the court affirmed the trial court's judgment, stating that "the statutory right to dissolution in this case is entirely dependent upon the question of whether there exists a deadlock in the management of the [JV's] corporate affairs. This question, and thus, the entirety of PHS's claim for judicial dissolution, can certainly be adjudicated apart from, and without reference to, any contracts." Id. at ¶32.

{¶32} Having considered the facts in *Promedica*, we find that the trial court's actions in the case at bar do not offend *Promedica's* holding. The court in *Promedica* essentially affirmed the trial court's determination that it should retain

-17-

jurisdiction over the issue of judicial dissolution, because such determination could be made without reference to the JV's contract. Similarly, the trial court here, in its February order, specifically reserved jurisdiction over the issue of judicial dissolution. This reservation was not disturbed in the trial court's September Judgment Entry. Accordingly, the issue of judicial dissolution was never referred to arbitration, and remains with the trial court.

{¶33} In addition, the case at bar is distinguishable from *Promedica*. Like the trial court in *Promedica*, the trial court here was ultimately tasked with determining whether there was a deadlock in Southpoint's management. Unlike *Promedica*, however, the trial court here, via Meyers' partial motion for summary judgment, was faced with a threshold issue, whether Marks has membership rights in Southpoint. This distinguishing fact is crucial, as determination of whether Marks has membership rights in Southpoint is arguably a determination that cannot be made without reference to the Agreement.

{¶34} The Agreement's arbitration provision is broad. When an agreement contains a broad arbitration provision, the provision must be enforced unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Alexander,* 122 Ohio St.3d 341, 2009-Ohio-2962, ¶13, quoting *Academy of Medicine of Cincinnati,* 2006-Ohio-657, at ¶14. Meyers contends that there is no need to consider the Agreement, and

thus no need for arbitration, as the existence of management deadlock can be determined via statute. Specifically, Meyers' cites R.C. 1705.24, which reads:

> ***Unless otherwise provided in writing in the operating agreement*, the management of a limited liability company shall be vested in its members in proportion to their contributions to the capital of the company, as adjusted from time to time to properly reflect any additional contributions or withdrawals by the members.**

R.C. 1705.24 (Emphasis Added). This statute, however, is only operative where the operating agreement is silent as to the proportion of the members' management rights. We cannot say with confidence that the Agreement before us does not set forth when and how a member obtains their membership/management rights, and the proportion of those rights. The Agreement contains provisions defining "Members", "Membership Interest", "Membership Rights", as well as provisions setting forth the members' initial capital contributions, the members' percentage interest, the management of Southpoint, and other seemingly relevant provisions. The foregoing provisions appear to address when and how a member obtains their membership/management rights, and the proportion of those rights. Consequently, we find that the issue of when and how a member, i.e., Marks, obtains membership/management rights, as well as the proportion of those rights, is one that arises under or by reason of the Agreement, and, pursuant to the Agreement's broad arbitration provision, must be arbitrated.

{¶35} Meyers' remaining contentions assert that arbitration is inappropriate because there are no disputed issues of fact, and that evidence proffered by Marks demonstrating payment of his initial capital contributions is barred by the parol evidence rule and the statute of frauds. In addressing these contentions we must be mindful that the issue on appeal is narrow in scope, i.e., whether a particular issue is arbitrable. Anything beyond the issue of arbitrability is not properly before this Court. This includes Meyers' remaining contentions. If this Court were to address the merits of these contentions we would be rendering an advisory opinion which is improper. Moreover, we are cognizant of the fact that Meyers' remaining contentions are born from his partial motion for summary judgment. The trial court, in its June 10, 2010 order, explicitly deferred ruling on Meyers' partial motion for summary judgment pending mediation. Although mediation has been abandoned for arbitration, the trial court's June 10, 2010 order remains in effect. Thus, we find that the trial court retains jurisdiction over Meyers' remaining contentions per its June 10, 2010 order. Accordingly, we are prohibited from addressing Meyers' remaining contentions.

{¶36} In light of the foregoing, we find that the trial court did not err by referring the issue of Marks' membership/management rights to arbitration. Similarly, we find that the issue of consent to dissolution was also properly

referred to arbitration, as the Agreement addresses dissolution of Southpoint via the consent of its members. Agreement, p. 28.

{¶37} Accordingly, Meyers' first and second assignments of error are overruled.

{¶38} Having found no error prejudicial to Meyers herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**