[Cite as *Loyer v. Signature Healthcare of Calion*, 2016-Ohio-7736.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

CALVIN LOYER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EDELTRUD M. LOYER,

      PLAINTIFF-APPELLEE,                CASE NO. 3-16-09

      v.

SIGNATURE HEALTHCARE OF
GALION, ET AL.,                     O P I N I O N

      DEFENDANTS-APPELLANTS.

Appeal from Crawford County Common Pleas Court
Trial Court No. 15-CV-0148

**Judgment Affirmed**

**Date of Decision: November 14, 2016**

APPEARANCES:

    *Robert M. Anspach and Mark D. Meeks* **for Appellants**

    *Blake A. Dickson and Daniel Z. Inscore* **for Appellee**

**PRESTON, J.**

{¶1} Defendants-appellants, Signature Healthcare of Galion, SHC LP Holdings, LLC, Signature Healthcare LLC, Signature Healthcare Clinical Consulting Services LLC, Signature Healthcare Consulting Services LLC, Ugwulo Rawlins, and SHC of Galion, LP Galion LLC (collectively "defendants"), appeal the judgment of the Crawford County Court of Common Pleas denying their motion to stay pending arbitration the proceedings initiated by plaintiff-appellee, Calvin Loyer ("Calvin"), as the personal representative of the estate of Edeltrud Loyer ("Edeltrud"), ("plaintiff"). For the reasons that follow, we affirm.

{¶2} This case stems from a survivorship and wrongful-death complaint filed by plaintiff on May 26, 2015 for the May 28, 2014 death of Edeltrud, alleging that her death was caused by the negligence of defendants. (Doc. No. 1). On August 10, 2015, defendants filed their answer. (Doc. No. 13). At the same time, defendants filed a motion to stay pending arbitration based on an arbitration agreement signed by Calvin on April 23, 2014 as part of Edeltrud's admission to defendants' nursing-home facility. (Doc. No. 14). Plaintiff filed affidavits of merit on October 22, 2015. (Doc. Nos. 24, 25).

{¶3} On March 1, 2016, plaintiff filed a memorandum in opposition to defendants' motion to stay pending arbitration. (Doc. No. 34). That same day, plaintiff filed the deposition of Becky King ("King")—the representative who

executed Edeltrud's nursing-home admission paperwork on behalf of defendants. (Doc. Nos. 35, 36). On March 15, 2016, defendants filed their reply to plaintiff's memorandum in opposition to defendants' motion to stay pending arbitration. (Doc. No. 37). On March 24, 2016, plaintiff filed "Plaintiff's Motion for Leave to File the Within Sur Reply Brief, Instanter, in Opposition to Defendants' Motion to Stay." (Doc. No. 38).

**{¶4}** On May 19, 2016, the trial court denied defendants' motion to stay pending arbitration. (Doc. No. 40). The trial court filed a more detailed entry denying defendants' motion to stay pending arbitration on June 1, 2016. (Doc. No. 42).

**{¶5}** Defendants filed their notice of appeal on June 6, 2016. (Doc. No. 43). They raise three assignments of error for our review. For ease of our discussion, we will discuss them together.[1]

---

[1] Assuming without deciding that they are properly before this court, we deny plaintiff's motions to dismiss and for sanctions. Plaintiff's motion to dismiss for the lack of a final appealable order is without merit because "[a] trial court's decision to grant or deny a motion to stay pending arbitration is a final appealable order." *Meyers v. Marks*, 3d Dist. Henry No. 7-10-13, 2011-Ohio-3523, ¶ 26, citing R.C. 2711.02(C). Also meritless is plaintiff's motion for sanctions because defendants' appeal is not frivolous. Under R.C. 2323.51(A)(2)(a)(ii), frivolous conduct is defined as conduct that "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." "A frivolous appeal under App.R. 23, '"is essentially one which presents no reasonable question for review."'" *Coburn v. Auto-Owners Ins. Co.*, 10th Dist. Franklin No. 09AP-923, 2010-Ohio-3327, ¶ 55, quoting *Stuller v. Price*, 10th Dist. Franklin No. 03AP-30, 2003-Ohio-6826, ¶ 28, quoting *Frowine v. Hubbard*, 10th Dist. Franklin No. 99AP-496, 2000 WL 284040 (Feb. 15, 2000). *See also Stegall v. Stegall*, 3d Dist. Auglaize No. 2-2000-28, 2001 WL 75660, *2 (Jan. 30, 2001). This appeal is not frivolous because it presents a reasonable question for review.

**Assignment of Error No. I**

**The trial court erred in failing to stay the case pending arbitration of either the pleaded wrongful death or survivorship claims pursuant to the subject *Agreement to Informally Resolve and Arbitrate All Disputes*.**

**Assignment of Error No. II**

**The trial court erred by finding that Appellee did not sign the *Agreement to Informally Resolve and Arbitrate All Disputes* in [sic] his own behalf, thus requiring arbitration of the wrongful death claims.**

**Assignment of Error No. III**

**The trial court erred by finding that Appellee lacked authority to sign the *Agreement to Informally Resolve and Arbitrate All Disputes* on behalf of his decedent, Edeltrud M. Loyer, thus requiring arbitration of the survivorship medical claims.**

{¶6} In their assignments of error, defendants argue that the trial court abused its discretion by denying their motion to stay pending arbitration because Calvin signed an arbitration agreement binding any survivorship or wrongful-death claims to the arbitration forum. That is, defendants argue that Calvin signed the arbitration agreement either on his own behalf or behalf of Edeltrud. Specifically, regarding the survivorship complaint, defendants argue that Calvin signed the arbitration agreement under "Ohio's necessaries statute, R.C. 3103.03, to effectuate his wife's admission to [defendants'] facility." (Appellants' Brief at 17). That is, defendants argue that Calvin had authority to sign on Edeltrud's behalf based on an emergency.

**{¶7}** "When reviewing a trial court's decision to grant or deny a motion to stay proceedings and compel arbitration, an appellate court generally applies an abuse-of-discretion standard of review." *Spearman v. Am. Elec. Power Co.*, 3d Dist. Hardin No. 6-14-13, 2015-Ohio-928, ¶ 13, citing *Kellogg v. Griffiths Health Care Grp.*, 3d Dist. Marion No. 9-10-59, 2011-Ohio-1733, ¶ 9, citing *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 15 (10th Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Furthermore, when a trial court makes factual findings, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference." *Kellogg* at ¶ 9, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 38 and *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995) (contract interpretation, a question of law, is reviewed de novo, "[u]nlike determinations of fact which are given great deference"). "'However, a de novo standard of review is appropriate when the appeal presents a question of law.'" *Spearman* at ¶ 13, quoting *Kellogg* at ¶ 9, citing *Morris* at ¶ 15 and *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.).

**{¶8}** Under Ohio law, survivorship claims are separate and distinct actions from wrongful-death claims. *Cincinnati Ins. Co. v. Phillips*, 44 Ohio St.3d 163, 166

(1989), *rev'd on other grounds*, 52 OhioSt.3d 162 (1990); *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 11 ("Although they are pursued by the same nominal party, we have long recognized the separate nature of these claims in Ohio."). "[W]hen an individual is killed by the wrongful act of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death as well as a wrongful-death action *for the injuries suffered by the beneficiaries of the decedent as a result of the death.*" (Emphasis sic.) *Peters* at ¶ 11. As such, we address first plaintiff's survivorship claim, followed by plaintiff's wrongful-death claim.

{¶9} We conclude that the trial court did not abuse its discretion by denying defendants' motion to stay pending arbitration with respect to plaintiff's survivorship claim because defendants failed to show that Calvin had the authority to bind Edeltrud to the terms of the arbitration agreement. There is no dispute that Edeltrud did not execute the arbitration agreement. However, defendants argue that Calvin "possessed sufficient authority" to execute the arbitration agreement on behalf of Edeltrud. (Appellants' Brief at 17).

{¶10} "'The relationship of principal and agent, and the resultant liability of the principal for the acts of the agent, may be created by the express grant of authority by the principal. Absent express agency, the relation may be one of implied or apparent agency.'" *Simmons v. Extendicare Health Servs., Inc.*, 5th Dist.

Delaware No. 15 CAE 12 0095, 2016-Ohio-4831, ¶ 15, quoting *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). "'Apparent agency exists "where one who is assuming to act as an agent for a party in the making of a contract but in fact has no actual authority to do so, such party will nonetheless be bound by the contract 'if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.'"'" *Id.*, quoting *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, ¶ 13, quoting *Master Consolidated Corp.* at 576, quoting *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93 (1950).

{¶11} "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Id.* at ¶ 16, citing *Master Consolidated Corp.* at syllabus. "The burden of proving that apparent authority exists rests upon the party asserting the agency." *Id.*, citing *Scott* at ¶ 15, citing *Irving Leasing Corp. v. M & H Tire Co.*, 16 Ohio App.3d 191 (2d Dist.1984).

**{¶12}** "It is the acts of the principal, not the acts of the agent, that create apparent authority." *Id.* at ¶ 17, citing *Master Consolidated Corp.* at syllabus. """"The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority.""" *Id.*, quoting *Primmer v. Healthcare Industries Corp.*, 4th Dist. Athens No. 14CA29, 2015-Ohio-4104, ¶ 26, quoting *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, ¶ 41.

**{¶13}** Defendants failed to prove that Calvin had *any* authority to bind Edeltrud to the arbitration agreement. First, defendants failed to prove that Calvin had Edeltrud's express authority to bind her to the arbitration agreement because it did not demonstrate that Calvin was Edeltrud's legal representative—that is, for instance, it did not provide a statutorily valid power of attorney or guardianship appointment. *See Brown v. Extendicare, Inc.*, 2d Dist. Montgomery No. 26589, 2015-Ohio-3059, ¶ 49 ("There is no evidence in the record before us that [the purported agent] was expressly authorized to act on [the decedent's] behalf by, for example, a power of attorney or guardianship appointment."); *Scott* at ¶ 8-10 (concluding that the decedent's daughter was not expressly authorized to execute an arbitration agreement on the decedent's behalf because there was no valid power of attorney). That Calvin signed the arbitration agreement as Edeltrud's purported "representative" cannot vest Calvin with actual authority in the absence of a

statutorily valid power of attorney or court order appropriating that authority to Calvin. *See Scott* at ¶ 10. Thus, defendants failed to meet their burden of proving that Calvin had actual authority to bind Edeltrud to the terms of the arbitration agreement.

{¶14} Second, defendants failed to prove that Calvin had Edeltrud's apparent authority to bind her to the terms of the arbitration agreement. Under the first prong of the apparent-authority analysis, defendants must establish that Edeltrud, the principal, held Calvin, the alleged agent, out to the public as possessing sufficient authority to bind her to the arbitration forum. *See Simmons*, 2016-Ohio-4831, at ¶ 19. As in *Simmons*, Calvin signed the paperwork for Edeltrud's admission to defendants' facility and the arbitration agreement was not a precondition to Edeltrud's admission. *See id.* Defendants did not provide any evidence that Edeltrud held out Calvin as possessing sufficient authority to enter into the arbitration agreement on Edeltrud's behalf. Defendants did not provide any evidence as to whether Edeltrud knew of the arbitration agreement. Likewise, the record reflects that Edeltrud was not present when Calvin signed her admission paperwork, including the arbitration agreement. Indeed, the record reflects that Calvin met with King—defendants' representative—in the lobby area of defendants' facility to execute Edeltrud's admission paperwork. (*See* King Depo. at 17, 27-28). *See also Simmons* at ¶ 19, citing *Scott* at ¶ 17, citing *Long v.*

*Beachwood Pointe Care Ctr.*, 8th Dist. Cuyahoga No. 100109, 2014-Ohio-1238, ¶ 6, and citing *Primmer*, 2015-Ohio-4104, at ¶ 25. While there is no requirement that the principal be aware that the documents are executed by his or her agent, be aware that those documents contain certain provisions, or witness his or her agent execute those documents, there remains the requirement that the principal clothe his or her agent with authority to act on his or her behalf prior to the agent acting. *See Brown* at ¶ 50, citing *Stocker v. Castle Inspections, Inc.*, 99 Ohio App.3d 735 (8th Dist.1995). Defendants did not prove that Edeltrud clothed Calvin with authority to act on her behalf. As such, defendants failed to prove the first prong of the apparent-authority test.

{¶15} Based on these circumstances, defendants failed to satisfy the second prong of the apparent-authority analysis by failing to present evidence that they acted in good faith having reason to believe that Calvin had authority to bind Edeltrud to the terms of the arbitration agreement. *See Koch v. Keystone Pointe Health & Rehab.*, 9th Dist. Lorain No. 11CA010081, 2012-Ohio-5817, ¶ 14; *Templeman v. Kindred Healthcare, Inc.*, 8th Dist. Cuyahoga No. 99618, 2013-Ohio-3738, ¶ 23-26. That is, because defendants provided no evidence that Edeltrud acted in any way to clothe Calvin with authority to act on her behalf, they could not have, in good faith, reasonably relied on any assertion of Calvin that he had the authority

to act. *See Master Consolidated Corp.,* 61 Ohio St.3d at 576. Therefore, defendants also failed to prove the second prong of the apparent-authority analysis.

{¶16} Nevertheless, defendants argue that they were justified in assuming that Calvin was authorized by necessity to sign the arbitration agreement on behalf of Edeltrud. There is scant jurisprudence, especially in Ohio, regarding agency out of necessity. The Seventh District Court of Appeals discussed agency by necessity: "in some situations agency may be created by necessity, that is, by an emergency arising from a particular situation making it necessary or proper for the agent to act without receiving the sanction or authority of the principal in the matter." *Adams v. Double E Enterprises, Inc.*, 7th Dist. Belmont No. 84-B-56, 1986 WL 4372, *3 (Apr. 4, 1986). Referencing American Jurisprudence, Ohio Jurisprudence recognizes that "an agency may arise by necessity." 3 Ohio Jurisprudence 3d, Agency and Independent Contractors, Section 76 (2016), citing 14 American Jurisprudence 2d, Expansion of Agent's Authority by Necessity, Section 14, at 483 (1977). American Jurisprudence expounds on the concept of agency by necessity:

> The rule requiring the agent to follow the principal's instructions does
> not apply where, from the necessities of the case, without the agent's
> fault or neglect, some sudden and unexpected emergency or
> extraordinary or supervening necessity arises, or some unforeseen
> event happens, which will not [allow] delay for consultation or

communication with the principal; in such case, if the agent, exercising prudence and sound discretion, in good faith adopts the course which seems best to him under all the circumstances as they exist, he will be justified and his acts will bind his principal, even though subsequent events may demonstrate that some other course would have been better.

* * *

Thus, for the proof to be sufficient it is necessary to show the unforeseeability of the situation, the possibility of substantial loss if nothing is done, the impossibility or unfeasibility of communicating with the principal before taking the necessary action, and the reasonableness of the decision made. Proof that a similar course was taken at some previous time with the sanction of the principal would, of course, be very helpful.

14 American Jurisprudence 2d, Expansion of Agent's Authority by Necessity, Sections 1, 2, at 483.

{¶17} Inherent in the doctrine of agency by necessity is an underlying emergency. *See O'Connor v. Bankers Trust Co.*, 159 Misc. 920, 947, 289 N.Y.S. 252 (1936) ("The doctrine of agency by necessity has no application here. It is invoked only where there is an emergency requiring immediate action by the agent,

and is generally limited to cases where action must be taken at once for the physical preservation of some person or object. If the agent has an opportunity to consult his principal before he takes action, the doctrine may not be invoked. No condition requiring immediate emergency action existed here."); 14 American Jurisprudence 2d, Expansion of Agent's Authority by Necessity, Section 1, at 483 ("As to the burden of proof in these cases, the [party] who seeks to hold the principal liable has the burden of showing that the person who contracted for emergency services was authorized to do so, and that the emergency or necessity involved was sufficient to constitute the basis of the expansion of the agent's authority."), citing *Barnes v Blue Plate Foods, Inc.*, 167 So 219 (La.App.1936); 14 American Jurisprudence 2d, Expansion of Agent's Authority by Necessity, Section 1, at 483 ("The emergency must be one which arises unexpectedly in the absence of the principal or master and which requires the agent or servant to act for the immediate protection of his employer's interests."), citing *Howland v Tri-State Theatres Corp.*, 139 F.2d 560 (8th Cir.1944) and *Marks v Rochester R. Co.*, 146 NY 181 (Ny.App.1895). Indeed, Black's Law Dictionary defines "agency by necessity" as a "doctrine * * * that confers authority to act for the benefit of another in an emergency." *Black's Law Dictionary* 74 (10th Ed.2014).

{¶18} Even assuming without deciding that defendants could rely on the doctrine of agency by necessity under Ohio law, defendants did not provide any

evidence that an emergency existed necessitating Calvin to bind Edeltrud to the terms of the arbitration agreement. Instead, the record reflects that Calvin was presented, and subsequently singed, the agreement eight days after Edeltrud was admitted to defendants' facility. Moreover, arbitration agreements are generally executed *before* a dispute arises between the parties. *See Black's* at 126. Accordingly, Edeltrud cannot be bound to the arbitration agreement out of any agency by necessity.

{¶19} Therefore, we conclude that defendants failed to meet their burden of proving that Calvin had apparent authority to bind Edeltrud to the terms of the arbitration agreement. Thus, because defendants failed to prove Calvin had any authority to bind Edeltrud to the terms of the arbitration agreement, the arbitration agreement as it pertains to the survivorship claim is not enforceable against Edeltrud. Accordingly, the trial court did not abuse its discretion by denying defendants' motion to stay pending arbitration with respect to plaintiff's survivorship claim.

{¶20} We next address whether the trial court abused its discretion by denying defendants' motion to stay pending arbitration with respect to plaintiff's wrongful-death claim. We conclude that the trial court did not abuse its discretion by denying defendants' motion to stay pending arbitration with respect to the

wrongful-death claim because defendants failed to show that Calvin signed the arbitration agreement in his individual capacity.

{¶21} "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *McFarren v. Emeritus at Canton*, 5th Dist. Stark No. 2013CA00040, 2013-Ohio-3900, ¶ 29, quoting *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998). *See also Peters*, 2007-Ohio-4787, at ¶ 8. "While arbitration is encouraged as a form of dispute resolution, the policy favoring arbitration does not trump the constitutional right to seek redress in court." *Peters* at ¶ 8. An arbitration agreement is not enforceable against a beneficiary who signs that agreement in a purported representative capacity. *See McFarren* at ¶ 30; *Peters* at ¶ 8. Only if that beneficiary signs that agreement in his or her individual capacity will the arbitration agreement be enforceable against that beneficiary. *See id.; Id.*

{¶22} As we noted above, aside from defendants' representative, King, Calvin was the only person to sign the arbitration agreement. However, Calvin did not sign the arbitration agreement in his individual capacity, but, as we addressed above, signed as the purported representative of Edeltrud. Indeed, Calvin's printed name appears as "Calvin Loyer Spouse" above the line entitled "Resident's Authorized Representative/Name and Relationship" and Calvin's signature appears above the line entitled "*RESIDENT REPRESENTATIVE SIGNATURE*." (Emphasis

sic.) (Doc. No. 14). There are two additional signature lines entitled "Additional Signatory/Relationship to Resident" at the bottom of the arbitration agreement. (*Id.*). Calvin did not sign on either one of those signature lines. Therefore, the arbitration agreement is not enforceable against Calvin. *See McFarren* at ¶ 30; *Younce v. Heartland of Centerville*, 2d Dist. Montgomery No. 26794, 2016-Ohio-2965, ¶ 53. Accordingly, the trial court did not abuse its discretion by denying defendants' motion to stay pending arbitration with regard to plaintiff's wrongful-death claim.

{¶23} Defendants' assignments of error are overruled.

{¶24} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**