[Cite as *McFarren v. Emeritus at Canton*, 2013-Ohio-3900.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| WANDA L. MCFARREN, IND. AND AS ADMINISTRATOR FOR THE ESTATE OF ANGELINE RINKER, DECEASED | : : : : : | JUDGES: Hon. W. Scott Gwin, P.J. Hon. John W. Wise, J. Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellant | : : | Case No. 2013CA00040 |
| -vs- | : : | |
| EMERITUS AT CANTON, ET AL | : | O P I N I O N |
| Defendants-Appellees | | |

CHARACTER OF PROCEEDING:       Civil appeal from the Stark County Court of
                               Common Pleas, Case No.2012CV02236

JUDGMENT:                      Reversed and Remanded

DATE OF JUDGMENT ENTRY:        September 9, 2013

APPEARANCES:

For Plaintiff-Appellant                For Defendants-Appellees

TZANGAS, PLAKAS, MANNOS                BONEZZI, SWITZER, MURPHY, POLITO
LTD                                    & HUPP
LEONIDAS PLAKAS                        MICHELLE BLOCK
MEGAN FRANTZ                           KEITH HANSBROUGH
220 Market Avenue South                1300 East 9th Street, Ste. 1950
Canton, OH  44702                      Cleveland, OH 44114

*Gwin, P.J.*

{¶1} Appellant appeals the January 31, 2013 judgment entry of the Stark County Court of Common Pleas granting appellees' motion to stay proceedings and compel or enforce arbitration.

## Facts & Procedural History

{¶2} This case arises from the treatment and care provided to Angeline B. Rinker ("Rinker") while she was a resident of Emeritus at Canton between July 8, 2010 and July 16, 2010. Appellant Wanda L. McFarren, individually and as administratrix of the Estate of Angeline B. Rinker, alleges that on July 15, 2010, Rinker was unattended at Emeritus at Canton, attempted to transfer herself, and fell. Appellant further alleges that, due to her fall, Rinker broke her left hip and subsequently died on July 21, 2010 from complications due to the broken hip.

{¶3} Approximately two years prior to her admission into Emeritus at Canton in July of 2010, Rinker executed a Health Care Power of Attorney. In the document dated May 12, 2008, Rinker appointed her friend Raymond Haidet as her agent to make health care decisions for her as authorized in the document. The document provides, in part:

I state this is my Health Care Power of Attorney and I revoke any prior Health Care Power of Attorney signed by me. I understand the nature and purpose of this document. If any provision is found to be invalid or unenforceable, it will not affect the rest of this document.

> This Health Care Power of Attorney is in effect only when I cannot make health care decisions for myself. However, this document does not require or imply that a court must declare me incompetent.

**{¶4}** In the document, "Health Care Power of Attorney" is defined as "this document that allows me to name an adult person to act as my agent to make health care decisions for me if I become unable to do so." The agent has "full and complete authority to make all health care decisions for me whenever I cannot make such decisions * * *."

**{¶5}** Wanda McFarren ("McFarren"), Rinker's daughter, and Douglas Gerber ("Gerber"), Rinker's grandson, were named as alternate agents in Rinker's health care power of attorney. Under the section entitled "Naming of Alternate Agents" in which McFarren and Gerber are listed, the document states, "any person can rely on a statement by any alternative agent named above that he or she is properly acting under this document and such person does not have to make any further investigation or inquiry."

**{¶6}** On July 7, 2010, as part of the admissions process at Emeritus at Canton, Gerber completed and executed a residency agreement for Rinker with Emeritus at Canton. Gerber signed the document on July 7, 2010 as Rinker's representative and selected the box entitled "power of attorney" on the residency agreement. McFarren signed the residency agreement on July 15, 2010 as Rinker's representative and also selected the box entitled "power of attorney." Also on July 7, 2010, as part of the admissions process, Gerber signed an "Agreement to Resolve Disputes by Binding Arbitration" as Rinker's authorized representative. The agreement states any dispute

between the parties shall be resolved exclusively by binding arbitration. McFarren did not sign the arbitration agreement.

**{¶7}** On July 8, 2010, Dr. Joseph Thomas, Rinker's primary care physician, completed, signed, and faxed to Emeritus at Canton a "Health Assessment for Assisted Living – Ohio." The assessment included a list of Rinker's medical conditions and her medications. In the health assessment, Dr. Thomas indicated Rinker's cognitive functioning was "good." After being admitted to Emeritus at Canton, Rinker fell on July 15, 2010 and subsequently died on July 21, 2010. The August 20, 2010 supplementary medical certificate to the certificate of death lists Rinker's immediate cause of death as "complications of left hip fracture due to fall."

**{¶8}** On July 13, 2012, appellant filed a complaint against appellees Emeritus Corporation, Emeritus at Canton, The Landing of Canton, Wegman Family (Canton) LLC VI and Diane Willis, asserting claims of medical negligence, violation of the Ohio Patient's Bill of Rights, breach of contract, wrongful death, and punitive damages. Appellees filed their answer to the complaint in September of 2012 and raised several affirmative defenses including lack of subject matter jurisdiction by virtue of an arbitration agreement. On January 11, 2013, appellees filed a motion to stay proceedings and to compel or enforce arbitration based on the arbitration agreement signed by Gerber on July 7, 2010. On January 31, 2013, the trial court granted appellees motion to stay proceedings and to compel or enforce arbitration. The trial court denied appellant's motion to vacate the order staying the proceedings pending the outcome of arbitration on February 25, 2013.

{¶9} Appellant appeals the judgment entry of the trial court granting the motion to stay pending the outcome of arbitration and to compel or enforce arbitration and assigns the following errors:

{¶10} "I. THE ARBITRATION AGREEMENT IS NOT ENFORCEABLE BECAUSE DOUGLAS GERBER DID NOT HAVE THE AUTHORITY TO SIGN THE ARBITRATION AGREEMENT ON BEHALF OF ANGELINE RINKER: THERE WAS NO DETERMINATION THAT ANGELINE RINKER COULD NOT MAKE HEALTH CARE DECISIONS FOR HERSELF AND DOUGLAS GERBER WAS NOT ANGLINE RINKER'S HEALTH CARE POWER OF ATTORNEY.

{¶11} II. THE TRIAL COURT ERRED AS A MATTER OF LAW STAYING THE WRONGFUL DEATH CLAIM BECAUSE AN ARBITRATION AGREEMENT IS NOT BINDING ON NONSIGNING WRONGFUL DEATH BENEFICIARIES."

*Jurisdiction & Standard of Review*

{¶12} R.C. 2711.02(C) provides that "an order * * * that grants or denies a stay of a trial of any action pending arbitration * * * is a final order and may be reviewed, affirmed, modified, or reversed on appeal* * *."  See also *Kelm v. Kelm*, 73 Ohio App.3d 395, 597 N.E.2d 535 (10th Dist. 1992).  Accordingly, the trial court's January 31, 2013 judgment entry is a final appealable order.

{¶13} "A trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal with respect to issues of law, which will commonly predominate because such cases generally turn on issues of contractual interpretation * * *."  *Hudson v. John Hancock Fin. Servs.*, 10th Dist. No. 06AP-1284, 2007-Ohio-6997.  Further, the "issue of whether a controversy is arbitable

under an arbitration provision of a contract is a question of law for the court to decide upon examination." *Rona Ents., Inc. v. Vanscoy*, 5th Dist. Nos. 09CA6, 09CAB, 2010-Ohio-1836. Here, the trial court must have determined the health care power of attorney was effective at the time Gerber signed the arbitration agreement, a question of law that requires de novo review. We need not defer to the trial court's decision in such cases. *Estate of Heath v. Grange Mut. Cas. Co.,* 5th Dist No. 02CAE05023, 2002–Ohio–5494, ¶ 9.

*I.*

**{¶14}** Appellant argues the health care power of attorney was not effective at the time Gerber signed the arbitration agreement because the conditions set forth in the health care power of attorney instrument and R.C. 1337.13(A)(1) were not met. Appellees argue appellant cannot overcome the strong presumption in favor of arbitration and appellant is unable to demonstrate Gerber had not validly exercised his legal authority as Rinker's health care power of attorney when he signed the arbitration agreement. We agree with appellant.

**{¶15}** R.C. 2711.01(A) provides:

A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously

create, shall be valid, irrevocable, and enforceable, except upon grounds

that exist at law or in equity for the revocation of any contract.

{¶16} The Ohio Supreme Court has recognized Ohio's public policy favoring arbitration. *Taylor Bldg. Corp. of America v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12 (2008). Despite the presumption favoring arbitration, a party cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration. *Council of Smaller Ents. v. Gates, McDonald, & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998).

{¶17} A power of attorney "is a written instrument authorizing an agent to perform specific acts on behalf of his principal." *Testa v. Roberts*, 44 Ohio App.3d 161, 164, 542 N.E.2d 654 (6th Dist. 1998). Ohio adopted the Uniform Power of Attorney Act in March of 2012. However, Rinker's health care power of attorney was executed in 2008 and is based on Ohio's former statutory health care power of attorney. R.C. 1337.11, et seq. R.C. 1337.13, in effect at the time Rinker's power of attorney was executed, provides a representative may make health care decisions only when the principal has lost the ability to make those decisions and states as follows:

(A)(1) An attorney in fact under a durable power of attorney for health care

shall make health care decisions for the principal only if the instrument * *

* specifically authorizes the attorney in fact to make health care decisions

for the principal, and only if the attending physician of the principal

determines that the principal has lost the capacity to make informed health

care decisions for the principal.

{¶18} Further, Rinker's power of attorney sets forth the terms upon which it becomes effective in the document, stating the health care power of attorney "is in effect

only when I cannot make health care decisions for myself" and providing the agent has "full and complete authority to make all health care decisions for me whenever I cannot make such decisions * * *." While the terms of Rinker's health care power of attorney specifically negate any requirement that a court declare Rinker incompetent for it to be effective, it is clear from the language contained in the instrument executed by Rinker that it was only effective if she could not make health care decisions for herself. If the conditions required for the power of attorney to come into being are not fulfilled, the representative has no authority to bind the principal. *State v. Keith*, 8th Dist. No. 72275, 1998 WL 742172 (Oct. 22, 1998).

{¶19} In this case, appellant presented evidence that the health care power of attorney was not in effect when Gerber signed the arbitration agreement. In his affidavit, Gerber stated that prior to and at the time of his signing of the arbitration agreement, he was not aware of any physician or other medical provider determining Rinker lost the capacity to make informed health care decisions for herself. Gerber also attached to his affidavit as an exhibit the Health Assessment produced by Emeritus at Canton pursuant to his request for Rinker's medical records and completed by Rinker's primary care physician. Dr. Thomas's assessment, completed the day after the arbitration agreement was signed, lists Rinker's cognitive functioning as "good." Emeritus at Canton did nothing to establish that Rinker could not make health care decisions for herself or otherwise ensure the health care power of attorney was valid when Gerber signed the agreement. As indicated by Gerber's affidavit, he did not sign the agreement in an individual capacity and only signed as Rinker's representative under a health care power of attorney that had specific conditions regarding when the

power was triggered. However, at the time Gerber signed the arbitration agreement, the health care power of attorney was not in effect because there is no evidence Rinker lost the capacity to make her own health care decisions.

{¶20} Appellees argue the case of *Vogt v. Indianspring of Oakley*, 1st Dist. No. C-110864, 2012-Ohio-4124, is identical to the instant case and this Court should adopt the reasoning contained in *Vogt* to affirm the trial court. In *Vogt,* the daughter of a long-term care facility patient signed an arbitration agreement. *Id.* The arbitration agreement stated as follows: "If Resident is unable to sign this Agreement, then a legal representative of the resident may sign on his/her behalf. The person signing below certifies that he/she has the legal authority to enter into this Agreement on Resident's behalf with the Facility either through a valid Power of Attorney or a guardianship appointment." *Id.* The First District Court of Appeals held the daughter had to demonstrate that she had not validly exercised her authority as the patient's legal representative when she signed the agreement for the arbitration agreement to be unenforceable. *Id.* The Court found the agreement was enforceable because the daughter failed to demonstrate she lacked the authority as the patient's legal representative when she signed the arbitration agreement. *Id.* In the instant case, the arbitration agreement does not contain the same language as the agreement in *Vogt* in which the representative specifically certified "that he/she has the legal authority to enter into this Agreement * * *." Further, unlike in the *Vogt* case, Rinker's family physician described her cognitive functioning as "good" the day after Gerber signed the arbitration agreement.

{¶21} We find the instant case to be analogous to *Tedeschi v. Atrium Centers LLC*, 8th Dist. No. 97647, 2012-Ohio-2929, in which the daughter of a nursing home patient signed several documents during the admissions process through a health care power of attorney, including a binding arbitration agreement. *Id.* The health care power of attorney at issue in the case stated it was only effective if the principal was not able to make healthcare decisions for herself. *Id.* In analyzing the case, the appellate court looked to the plain language of the health care power of attorney instrument and the language contained in R.C. 1337.13(A)(1). *Id.* The court determined the daughter lacked the authority to sign the arbitration agreement because there was no determination the principal had lost the capacity to make informed health care decisions for herself. *Id.* In this case, Rinker's health care power of attorney also contained specific language stating it was only effective if Rinker was not able to make health care decisions for herself. In addition, as in *Tedeschi*, there is no evidence suggesting Rinker did not possess the capacity to make informed health care decisions for herself at the time Gerber signed the arbitration agreement. Rinker's primary care physician determined, the day after the arbitration agreement was signed, that Rinker's cognitive functioning was "good" and appellees failed to present any evidence to the contrary.

{¶22} Appellees also contend the following clause in Rinker's health care power of attorney gave them the right to rely on Gerber's representations when he signed the arbitration agreement: "any person can rely on a statement by any alternative agent named above that he or she is properly acting under this document and such person does not have to make any further investigation or inquiry." However, there is no indication this clause has any relation to the condition that Rinker lack the capacity to

make her own health care decisions. The condition regarding the lack of ability to make her own health care decisions is on the first page of Rinker's health care power of attorney, in the second paragraph of the document. The document continues with definitions, naming of the agent, and then contains a section entitled "Naming of Alternate Agents." The clause regarding relying on the representations of an alternate agent's statements is contained in the "Naming of the Alternate Agents" section and does not invalidate the clause at the beginning of the document setting forth the requirement of lack of ability to make her own health care decisions.

**{¶23}** Appellees finally argue Gerber and McFarren were acting as Rinker's "resident sponsors" pursuant to R.C. 3721.10(D) and thus had the authority to sign the arbitration agreement on Rinker's behalf. The statute cited by appellees is the part of Ohio's Bill of Rights for Nursing Home Patients which sets forth certain rights afforded to nursing home residents. *Harrison v. Winchester Place Nursing & Rehabilitation Center*, 10th Dist. No. 12AP-327, 2013-Ohio-3163. The Bill of Rights gives the resident or the resident's sponsor the ability to act on behalf of the resident to ensure the patient's rights are not being violated. *Id.* The statute does not forbid a claim from being arbitrated, but permits a cause of action against any person or home committing the violation. *Id.* However, there is no language in the Bill of Rights for Nursing Home Patients providing that simply being a "resident sponsor" for the purpose of enforcing the resident's rights provides a representative with the authority to sign an arbitration agreement when a health care power of attorney specifically sets forth the conditions under which an agent can make health care decisions on behalf of the principal.

**{¶24}** Accordingly, we find the arbitration agreement is not enforceable because Gerber did not have the authority to sign the agreement on behalf of Rinker. Appellant's first assignment of error is sustained.

*II.*

**{¶25}** Appellant contends the trial court erred as a matter of law in staying the wrongful death claim of Rinker's beneficiaries because the Ohio Supreme Court has held that an arbitration agreement is not binding on non-signing wrongful death beneficiaries. Appellees argue the case cited to by appellant was overruled by the United States Supreme Court's decision in *Marmet Health Care Ctr., Inc. v. Brown.* We agree with appellant.

**{¶26}** In 2007, the Ohio Supreme Court accepted an appeal of a Tenth District Court of Appeals case to clarify whether an individual decedent can bind his beneficiaries to arbitrate their wrongful death claims against a defendant in *Peters v. Columbus Steel Castings Co.*, 115 Ohio St.3d 134, 873 N.E.2d 1258. The Court analyzed the issue in accordance with two general principles of law: that only signatories to an arbitration agreement are bound by the terms of such agreement and that a survival action of a decedent is independent from a wrongful death action of decedent's beneficiaries. *Id.* at 136. The Ohio Supreme Court determined when the decedent agreed to arbitrate his claims, he could not bind his beneficiaries to arbitration for their wrongful death claims because his beneficiaries did not sign the arbitration agreement. *Id.* at 138.

**{¶27}** In 2012, the United States Supreme Court decided a case involving three negligence suits against nursing homes in West Virginia. *Marmet Health Care Center,*

*Inc. v. Brown*, 565 U.S. --, 132 S.Ct. 1201, 182 L.Ed. 2d 42 (2012). In each case, a family member of a patient signed an agreement with a nursing home on behalf of the patient that required the parties to arbitrate all disputes and a family member of the patient in each case sued the nursing home in state court, alleging negligence caused injuries or harm to the patient resulting in death. *Id.* The West Virginia Supreme Court previously heard the case, focused on the public policy of the West Virginia Nursing Home Act, and determined that the West Virginia legislature intended for actions involving potential violations of the health and well-being of nursing home residents to be publicly determined in the court system. *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250 (W.Va. 2011), *overruled*, *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. --, 132 S.Ct. 1201, 182 L.Ed. 2d 42 (2012). Thus, the West Virginia Supreme Court held, "as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." *Id.* at 292.

{¶28} The Supreme Court of the United States vacated the West Virginia decision and held that "West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA [Federal Arbitration Act]". *Marmet Health Care Center*, 565 U.S. --, 132 S.Ct. 1201, 1204. The Court also reaffirmed its position that categorical rules prohibiting arbitration of a particular type of claim are in violation of the terms and coverage of the Federal Arbitration Act ("FAA"). *Id.*

**{¶29}** Unlike the ruling by the West Virginia Supreme Court in *Brown ex rel. Brown*, the ruling by the Ohio Supreme Court in *Peters* did not create a categorical rule that prohibited pre-dispute agreements to arbitrate wrongful death claims against nursing homes. Rather, the holding in *Peters* was based on common law principles governing contracts and found that only signatories to an arbitration agreement are bound by its terms. This holding comports with the general rule that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998). The language used in the *Peters* opinion by the Supreme Court of Ohio indicates their holding does not create a categorical rule prohibiting arbitration agreements in wrongful death cases as the Court specifically stated that while a decedent cannot bind his or her beneficiaries to arbitrate their wrongful death claims, "the beneficiaries can agree to arbitrate these claims themselves, but they are not required to do so." *Peters*, 115 Ohio St. 3d at 138. The holding in *Peters* requiring a real party in interest to sign an arbitration agreement for such agreement to be enforceable is not in conflict with the FAA as the FAA states arbitration agreements are enforceable except "upon such grounds as exist at law or in equity for the revocation for any contract." 9 U.S.C. § 2.

**{¶30}** Accordingly, we find *Peters* to be controlling in that arbitration agreements are not enforceable against non-signing beneficiaries to a wrongful death claim. Here, the only one of Rinker's beneficiaries to sign the arbitration agreement was Gerber. However, Gerber did not sign the arbitration agreement in his individual capacity, but signed as the purported "representative" of Rinker. Pursuant to *Peters*, the arbitration

agreement in the instant case, as it pertains to the wrongful death claim, is not enforceable against Rinker's beneficiaries.  Appellant's second assignment of error is sustained.

{¶31} Based on the foregoing, we find the trial court erred in granting appellees' motion to stay proceedings pending the outcome of arbitration and compel or enforce arbitration.  The January 31, 2013 judgment entry of the Stark County Court of Common Pleas is reversed and we remand the matter to the trial court for further proceedings in accordance with the law and this opinion.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur

_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


_____
HON. CRAIG R. BALDWIN


WSG:clw 0829

[Cite as *McFarren v. Emeritus at Canton*, 2013-Ohio-3900.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

WANDA L. MCFARREN, IND. AND
AS ADMINISTRATOR FOR THE
ESTATE OF ANGELINE RINKER,
DECEASED                                          :
                                                  :
                 Plaintiff-Appellant              :
                                                  :
                                                  :
-vs-                                              :        JUDGMENT ENTRY
                                                  :
EMERITUS AT CANTON, ET AL                         :
                                                  :
                                                  :
                 Defendants-Appellees             :        CASE NO. 2013CA00040


        For the reasons stated in our accompanying Memorandum-Opinion, the January 31, 2013 judgment entry of the Stark County Court of Common Pleas granting appellees' motion to stay and to compel or enforce arbitration is reversed and we remand the matter to the trial court for further proceedings in accordance with the law and this opinion.  Costs to appellees.


                                          _____
                                          HON. W. SCOTT GWIN


                                          _____
                                          HON. JOHN W. WISE


                                          _____
                                          HON. CRAIG R. BALDWIN