[Cite as *Primmer v. Healthcare Industries Corp.*, 2015-Ohio-4104.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| JOHN PRIMMER, | : | Case No. 14CA29 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| HEALTHCARE INDUSTRIES CORPORATION, ET AL., | : | |
| | : | **RELEASED: 9/24/2015** |
| Defendants-Appellants. | : | |
| | : | |

APPEARANCES:

Tucker Ellis L.L.P., Susan M. Audey, Ernest W. Auciello, and Sarah A. Stover, Cleveland, Ohio, for appellants.

McHugh Fuller Law Group, Michael J. Fuller, Jr. and D. Bryant Chaffin, Hattiesburg, Mississippi, for appellee.

Harsha, J.

{¶1}    John Primmer filed a complaint against the owners and agents of Hickory Creek Nursing Center in The Plains seeking damages for personal injuries he suffered while he was a resident. The nursing home responded with a motion to stay proceedings and compel arbitration based on an arbitration agreement Primmer's daughter signed upon his admission to Hickory Creek.  The trial court denied the motion, finding Primmer never signed the arbitration agreement and his daughter lacked authority under the power of attorney for health care to bind him to arbitrate disputes.

{¶2}    Hickory Creek asserts that the trial court erred in denying its motion to stay proceedings and compel arbitration. In resolving this question of law, we agree with the trial court's conclusion that the health care power of attorney did not authorize Primmer's daughter to bind him to arbitrate disputes.  The applicable Ohio statutory

definitions of "health care" and "health care decision" governing powers of attorney for health care and the interpretation of similar issues by foreign jurisdictions support the conclusion that a decision to waive the right to litigate in favor of arbitration is legal in nature rather than being a health care decision. Furthermore, the mere fact that Primmer's daughter signed other admission documents on his behalf at the same time she signed the arbitration agreement did not vest her with apparent authority; Primmer himself did not engage in any negotiations concerning admission or arbitration. And he was incompetent at the time so he would not have knowingly permitted his daughter to act on his behalf when she executed the arbitration agreement. Therefore, we overrule Hickory Creek's assignment of error and affirm the judgment of the trial court.

## II. FACTS

{¶3}    In August 2012, Primmer used a form entitled "VA Advance Directive: Durable Power of Attorney for Health Care and Living Will," to appoint his daughter, Pamela McCathern, to "make decisions about [his] health care" if he "cannot make those decisions." The form specified that it "is an official document where you can write down your preferences about your medical care" and "[i]f someday you become unable to make health care decisions for yourself, this advance directive can help guide the people who will make decisions for you." The form further noted that it permitted the principal "to appoint a specific person to make health care decisions for you in case you become unable to make decisions for yourself" and if the person became "too ill to make decisions for yourself, your Health Care Agent will have the authority to make health care decisions for you, including decisions to admit you to and discharge you from any hospital or health care institution." The form also stated that "[y]our Health

Care Agent can also decide to start or stop any type of clinical treatment, and can access your personal health information, including information from your medical records." The power of attorney included no definition of "health care," but both Primmer and his daughter were residents of Ohio at the time they executed it.

{¶4}    At some point after executing the durable power of attorney, Primmer was no longer competent to handle his own affairs because his cognitive and physical skills were impaired. In November of 2012, McCathern signed an agreement admitting her father into the Hickory Creek Nursing Center. He remained a resident there until January 2013. On the same date that she signed the admission agreement, McCathern signed several other documents, including an arbitration agreement. That agreement provides for the waiver of the resident's right to a trial in court or a trial by jury for any legal claims against the nursing home and for final and binding arbitration of any claim arising out of the admission agreement, including all claims based on breach of contract, negligence, medical malpractice, tort, breach of statutory duty, and resident's rights. The agreement emphasized that "[a]greeing to arbitrate legal disputes is not a condition of admission, and care and treatment will be provided whether or not they agree to arbitrate (if they do not wish to sign this Agreement then they are under no requirement to do so)."

{¶5}    After leaving the facility Primmer filed a complaint in the Athens County Court of Common Pleas against 51 The Plains, Inc. dba Hickory Creek Nursing Home, BCFL Management, Inc., BCFL Holdings, Inc., dba Provider Services, Inc., Provider Services, Inc., and Dave Miller (collectively "Hickory Creek"). In his subsequently amended complaint Primmer raised multiple claims, including negligence, medical

malpractice, and premises liability related to personal injuries and damages he allegedly suffered while a resident at the nursing home.

**{¶6}** Hickory Creek filed a motion to stay proceedings and compel arbitration based on the arbitration agreement Primmer's daughter signed on his behalf and the power of attorney for health care Primmer executed appointing his daughter as his health care agent. The matter proceeded to a hearing where Cathy Hunter, the Hickory Creek Director of Social Work, testified that she considered the arbitration agreement to be a health care decision, but she conceded that it did not have any impact on the care and treatment that Primmer received, regardless of whether he had signed it. In a detailed decision the trial court denied the motion based on the language of the power of attorney for health care, Ohio statutory provisions governing health care powers of attorney, and cases from other jurisdictions addressing the issue. The trial court also rejected Hickory Creek's alternative claim based on McCathern's apparent authority. This appeal ensued.[1]

## II. ASSIGNMENT OF ERROR

**{¶7}** Hickory Creek assigns the following error for our review:

The trial court erred in denying Defendants-Appellants' Motion to Stay Proceedings and Compel Arbitration.

## III. STANDARD OF REVIEW

**{¶8}** We have held that in general "[a]n appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration or stay the proceedings under the abuse of discretion standard." *Fields v. Herrnstein Chrysler, Inc.*, 4th Dist. Pike No

---

[1] "R.C. 2711.02(C) permits a party to appeal a trial court order that grants or denies a stay of trial pending arbitration, even when the order makes no determination pursuant to Civ.R. 54(B)." *Mynes v. Brooks*, 124 Ohio St.3d 13, 2009-Ohio-5946, 918 N.E.2d 511, syllabus.

12CA827, 2013-Ohio-693, ¶ 12, citing *K.M.P., Inc. v. Ohio Historical Society*, 4th Dist. Jackson No. 03CA2, 2003-Ohio-4443, ¶ 14. Nevertheless, " '[a] trial court's decision granting or denying a stay of proceedings pending arbitration is * * * subject to de novo review on appeal on issues of law, which will commonly predominate because such cases generally turn on issues of contractual interpretation * * *.' " *McFarren v. Emeritus at Canton*, 2013-Ohio-3900, 997 N.E.2d 1254, ¶ 13 (5th Dist.), quoting *Hudson v. John Hancock Fin. Servs.*, 10th Dist. Franklin No. 06AP-1284, 2007-Ohio-6997, ¶ 8; *see also Duncan v. Wheeler*, 4th Dist. Scioto No. 09CA3296, 2010-Ohio-4836, ¶ 5 (in appeal from denial of motion to stay proceedings and to compel arbitration, we observed that "appellate courts employ a de novo standard when reviewing a trial court's interpretation of contract provisions, including arbitration provisions"); *see also Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 37 (rejecting an abuse-of-discretion standard of review and applying a de novo standard of review in reviewing decision granting motion to stay litigation and compel arbitration when the underlying issue was whether the arbitration provision was unenforceable because of alleged unconscionability).

{¶9} The issue here is a legal one, i.e. whether the health care power of attorney Primmer executed authorized his health care agent, his daughter, to bind him to the nursing home's arbitration agreement. The answer to that question is dependent upon our interpretation of the written instruments, applicable statutes, and case law. Therefore, we review the trial court's decision using a de novo standard of review.

IV. LAW AND ANALYSIS

A. Health Care Power of Attorney

**{¶10}**  In its sole assignment of error Hickory Creek asserts that the trial court erred in denying its motion to stay proceedings and compel arbitration.  "Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration."  *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, citing R.C. Chapter 2711 and *Taylor* at ¶ 27.  Arbitration is favored because it provides an expeditious and economical means of resolving a dispute and has the added benefit of lessening the burden on crowded court dockets.  *Hayes* at ¶ 15.

**{¶11}**  R.C. 2711.02(B) provides for the enforcement of an arbitration agreement when a party requests a stay of litigation pending arbitration:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

**{¶12}**  "In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor."  *Hayes* at ¶ 15.  This presumption applies equally to arbitration agreements between nursing home residents and nursing homes.  *Id.* But, "despite the presumption favoring arbitration, a party cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration."  *McFarren*, 2013-Ohio-3900, 997 N.E.2d 1254, at ¶ 16, citing *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 687 N.E.2d 1352 (1998).

**{¶13}** Primmer did not personally sign the arbitration agreement with Hickory Creek so the dispositive legal issue is whether his daughter had authority to do so. Hickory Creek claims that Primmer's daughter expressly had authority to sign the

arbitration agreement on behalf of Primmer through the power of attorney for health care and impliedly through her apparent authority.

{¶14} " 'A power of attorney * * * is a written instrument authorizing an agent to perform specific acts on behalf of the principal.' " *Cartwright v. Batner* , 2014-Ohio-2995, 15 N.E.3d 401, ¶ 67 (2d Dist.), quoting *In re Guardianship of Simmons* , 6th Dist. Wood No. WD-02-039, 2003-Ohio-5416, ¶ 25. Primmer executed a power of attorney for health care that appointed his daughter, McCathern, as his agent to "make decisions about [his] health care if there ever comes time when [he] cannot make those decisions." The instrument contained no definition of "health care" or "decisions about health care," but indicated that the types of decisions the appointed agent could make included "decisions to admit [him] to and discharge [him] from any hospital or other health care institution."

{¶15} In Ohio durable powers of attorney for health care are governed by R.C. 1337.11 to 1337.17. 2 Carlin, *Baldwin's Ohio Practice Merrick-Rippner Probate Law*, Section 61:17 (2014). "An attorney in fact under a durable power of attorney for health care shall make health care decisions for the principal only if the instrument substantially complies with section 1337.12 of the Revised Code and specifically authorizes the attorney in fact to make health care decisions for the principal, and only if the attending physician of the principal determines that the principal has lost the capacity to make informed health care decisions for the principal." R.C. 1337.13(A)(1). "An adult who is of sound mind may create a valid durable power of attorney for health care * * *." R.C. 1337.12(A)(1).

**{¶16}** Durable powers of attorney for health care in Ohio are effective for "health care decisions," which are defined in R.C. 1337.11(H) as "informed consent, refusal to give informed consent, or withdrawal of informed consent to health care"; "health care" is defined in R.C. 1337.11(G) as "any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition or physical or mental health." Courts must give effect to the unambiguously expressed intent of the General Assembly. *Cleveland Clinic Foundation v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 29. Under their plain and unambiguous meaning, these statutory terms do not apply to decisions to submit disputes between nursing homes and their patients to binding arbitration. That is, a decision to arbitrate a dispute is not a decision on informed consent to care, treatment, service, or procedure to maintain, diagnose, or treat the patient's physical or mental health or condition. Indeed, Hickory Creek does not specifically argue otherwise on appeal-it does not claim that the plain language of R.C. 1337.11(G) and (H) requires a different result.

**{¶17}** Instead, Hickory Creek claims that the trial court erred in failing to apply Ohio precedent that it contends "inferred" the validity of arbitration agreements executed by an attorney-in-fact for health care decisions. It cites *McFarren*, 2013-Ohio-3900, 997 N.E.2d 1254, and *Tedeschi v. Atrium Centers, L.L.C.*, 8th Dist. Cuyahoga No. 97647, 2012-Ohio-2929, in support of its claim. In *McFarren*, the court held that a nursing home resident's grandson, who had a power of attorney for health care for the resident, lacked authority to bind the resident to an arbitration agreement he signed on her behalf because there was no evidence that she was unable to make informed health care decisions for herself at that time. In *Tedeschi* the court similarly held that the daughter

of a nursing home resident who had a power of attorney for health care could not bind the resident by signing an arbitration agreement because there was no determination that the resident had lost the capacity to make informed health care decisions for herself. Hickory Creek is correct that these decisions did not question or otherwise find that the arbitration agreements were unenforceable because their execution did not constitute a health care decision. But this argument acknowledges that these cases did not address the issue before us because they did not need to. Consequently, they are inapposite here.

{¶18} We hold that the terms of this health care power of attorney do not encompass decisions to waive trial by jury or the court in favor of arbitration. Although not defining "health care decisions," the instrument specified that the decisions included "decisions to admit you to and discharge you from any hospital or health care institution." Under the plain terms of the arbitration agreement Primmer's daughter signed, "[a]greeing to arbitrate legal disputes" was "not a condition of admission, and care and treatment will be provided whether or not they agree to arbitrate." The fact that execution of the arbitration agreement was not necessary for admission was confirmed by the uncontroverted testimony of Hickory Creek's Director of Social Work, who conceded that the arbitration agreement had no impact on the medical care and treatment that Primmer received at the nursing home. Consequently, the plain language of the power of attorney for health care and arbitration agreement supports the trial court's legal conclusion that the arbitration agreement is not a health care decision that Primmer's daughter was authorized to make.

**{¶19}** And, as the trial court noted in its thorough analysis, cases from other

jurisdictions addressing this issue support that conclusion.  In *Dickerson v. Maryland*,

414 Md. 419, 444-448, 995 A.2d 721 (2010) (footnotes omitted), the Court of Appeals

for Maryland held that a decision to enter into an arbitration agreement that is not a

condition to admission to a health care facility is not a health care decision to which a

health care agent could bind the patient:

> * * * Quite obviously, the decision to sign an arbitration agreement is not,
> in and of itself, a health care decision.  It may sometimes be related to a
> health care decision, as in the present case where the arbitration
> agreement was included with the admissions documents for a health care
> facility and would require arbitration of health care claims.  Subject to the
> limitations we discuss below, however, the decision to sign an arbitration
> agreement is a decision concerning the legal rights of the parties to the
> agreement about how to resolve their legal disputes, not a health care
> decision.
>
> Although we have never addressed this issue, other courts have drawn a
> distinction between a health care decision and a decision to sign an
> arbitration agreement, even where the arbitration agreement is related to a
> health care decision.  In several cases involving health care facilities, the
> intermediate appellate courts in Colorado, Florida, Georgia, and Texas
> have concluded that the authority to make health care decisions on
> another's behalf does not constitute authority to sign an arbitration
> agreement on that person's behalf. *See  Lujan v. Life Care Ctrs. of Am.*,
> 222 P.3d 970, 973-76 (Colo.Ct.App.2009) (agreeing with other
> jurisdictions that have concluded that " a health care proxy's decision to
> agree to arbitrate is [not] a medical treatment decision" ); *Blankfeld v.
> Richmond Health Care, Inc.*, 902 So.2d 296, 301 (Fla.Ct.App.2005) ("
> There is nothing in the [health care proxy] statute to indicate legislative
> intent that such a proxy can enter into contracts which agree to things not
> strictly related to health care decisions. In our opinion, a proxy is not
> authorized to waive the right to trial by jury...." ); *Life Care Ctrs. of Am. v.
> Smith*, 298 Ga.App. 739, 681 S.E.2d 182, 185 (2009) (concluding that a "
> health care power of attorney did not give [a daughter] the power to sign
> away her mother's or her mother's legal representative's right to a jury
> trial" ); *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352
> (Tex.Ct.App.2007) (" [N]othing in the medical power of attorney indicates
> that it was intended to confer authority ... to make legal, as opposed to
> health care, decisions ..., such as whether to waive [the] right to a jury trial
> by agreeing to arbitration of any disputes." ). Those courts drew a

distinction between making health care decisions and the decision to sign an arbitration agreement, even when an arbitration agreement is related to health care.

In our view, however, there are circumstances upon which the decision to sign an arbitration agreement may be a health care decision. Courts in other jurisdictions have recently concluded that the decision to sign an arbitration agreement was not a health care decision, and they based that decision on the fact that signing the arbitration agreement was not a prerequisite to admission to a health care facility. In *Koricic*, as we noted earlier, the Supreme Court of Nebraska concluded that a son who had authority to sign health care documents on behalf of his mother did not have authority to sign an arbitration agreement on her behalf. 773 N.W.2d at 149-52. In reaching that decision, the court explained that the decision to sign the arbitration agreement was not within the son's authority because the agreement " was optional and was not required for [the mother] to remain at the [nursing home] facility." *Id.* at 151. Similarly, the Supreme Court of Mississippi concluded in *Hinyub* that the decision to sign an arbitration agreement is not a " health care decision" where the patient or his agent " was not required to sign the arbitration provision to admit [the patient] to the [health care facility]." 975 So.2d at 218. The Mississippi court drew a distinction between Hinyub's case and previous cases in which " the arbitration provision was an essential part of the consideration for the receipt of ' health care.' " *Id.* (citing *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So.2d 732 (Miss.2007), and [995 A.2d 739] *Vicksburg Partners, L.P. v. Stephens*, 911 So.2d 507 (Miss.2005)).

We agree with the reasoning of those courts. The decision to sign a free-standing arbitration agreement is not a health care decision if the patient may receive health care without signing the arbitration agreement. In such a case, the decision primarily concerns the legal rights of the patient with respect to resolving legal claims. If signing the arbitration agreement is necessary to receive health care, then the decision to sign the agreement is a health care decision because the receipt of health care depends on whether the patient agrees to arbitrate his or her claims. In that case, the decision to sign the arbitration agreement is effectively a decision about where and whether to receive health care, either from a facility that requires the patient to sign an arbitration agreement, from a facility that does not impose such a requirement, or from no facility at all.

{¶20} As the Supreme Judicial Court of Massachusetts recently held, the "conclusion that a health care agent does not have the authority to bind the principal to an arbitration agreement comports with the view of a majority of courts in other

jurisdictions that have considered similar issues." *Johnson v. Kindred Healthcare, Inc.*, 466 Mass 779, 789-790, 2 N.E.3d 849 (2014); *see also State ex rel. AMFM, LLC v. King*, 740 S.E.2d 66 (W.Va.2013), paragraph eight of the syllabus ("An agreement to submit future disputes to arbitration, which is optional and not required for the receipt of nursing home services, is not a health care decision under the West Virginia Health Care Decisions Act, W.Va.Code § 16-30-1 *et seq*").

**{¶21}** Based on the plain language of the instruments and statutes governing durable powers of attorney for health care in Ohio, as well as the persuasive authority of other jurisdictions addressing the same issue, we hold that this durable power of attorney for health care does not authorize McCathern to waive Primmer's rights of access to courts and to compel arbitration. In other words, under these facts the decision to waive the right to arbitrate is a legal determination, not a health care decision. The trial court ruled correctly on this issue.

### B.  Apparent Authority

**{¶22}** Hickory Creek also argues that it was entitled to a stay of proceedings and compelled arbitration because of McCathern's apparent authority to act on behalf of her father.

**{¶23}** "In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show:  (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority."

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 575 N.E.2d 817 (1991), syllabus.

{¶24} The only evidence of Primmer's actions here regarding his daughter's authority was his execution of the durable health care power of attorney. But as we already decided, his power of attorney for health care did not authorize his daughter to enter into the arbitration agreement because it did not constitute a health care decision under the plain language of the instrument and statutory provisions.

{¶25} In addition there is no evidence that Primmer was present when his daughter signed the admission and other documents, including the arbitration agreement, or that he otherwise held her out to be authorized to enter into the arbitration agreement on his behalf. Nor did Hickory Creek have a reasonable belief that Primmer's daughter was so authorized. *See State ex rel. AMFM, LLC*, 740 S.E.2d 66, at fn. 10 ("To the extent that McDowell Nursing believed that Ms. Belcher's authority extended to the making of other, non-health care decisions, its belief was not reasonable in light of the explicit limitation of Ms. Belcher's power as a health care surrogate to the making of health care decisions on Ms. Wyatt's behalf and its own concession that the subject Arbitration Agreement was not a precondition for Ms. Wyatt's receipt of services").

{¶26} The mere fact that Primmer's daughter signed other documents as part of the admission process did not cloak her with the requisite apparent authority to bind Primmer to an arbitration agreement that he knew nothing about. *See Lang v. Beachwood Pointe Care Ctr.*, 8th Dist. Cuyahoga No. 100109, 2014-Ohio-1238, ¶ 6, appeal not accepted for review, 140 Ohio St.3d 1415, 2014-Ohio-3785, 15 N.E.3d 884.

Hickory Creek's reliance on Primmer's daughter's actions in signing other admission documents is misplaced because a claim of apparent authority cannot be based on her acts. "Under an apparent-authority analysis, an agent's authority is determined by the acts of the principal rather than by the acts of the agent. The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority." *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 41.

{¶27} Moreover, at the time his daughter signed the arbitration agreement, Primmer could not have knowingly permitted her to act on his behalf because he was incompetent to conduct his own affairs.

{¶28} Therefore, the trial court correctly denied Hickory Creek's alternate claim that Primmer's daughter had apparent authority to enter into the arbitration agreement on his behalf. We overrule Hickory Creek's assignment of error.

## V. CONCLUSION

{¶29} After a de novo review of the issues, we hold that the trial court correctly denied Hickory Creek's motion to stay proceedings and compel arbitration. Primmer's daughter was not authorized under the health care power of attorney to waive his right to access to courts and agree to binding arbitration. And she lacked the apparent authority to enter into the arbitration agreement on his behalf. Having overruled Hickory Creek's sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J.: Concurs in Judgment and Opinion.
McFarland, A.J.: Dissents.



For the Court



BY: _____
      William H. Harsha, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**