**[Cite as *Barker v. Arbors at Stow*, 2025-Ohio-5769.]**

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

KENNETH D. BARKER, Individually and
by and through his Legal Guardians, Justine
S. Winger and Lindsey M. Schulz

       Appellee

       v.

ARBORS AT STOW, et al.

       Appellants

C.A. No.     31300

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2024-04-1449

DECISION AND JOURNAL ENTRY

Dated: December 26, 2025

---

SUTTON, Judge.

**{¶1}** Defendants-Appellants Arbors at Stow, Arbors of Ohio, and Stow OPCO (collectively "Arbors") appeal the judgment of the Summit County Court of Common Pleas denying their motion to stay proceedings and enforce an arbitration agreement. For the following reasons, this Court affirms.

I.

**Relevant Background Information**

**{¶2}** Plaintiff-Appellee Kenneth D. Barker was a patient at Arbors at Stow, a skilled nursing care facility. Prior to his admission to Arbors at Stow, the Summit County Probate Court had determined Mr. Barker to be incompetent and had appointed separate guardians of person and estate for him pursuant to R.C. Chapter 2111. On April 3, 2024, Mr. Barker, by and through his guardian of estate Justine S. Winger and guardian of person, his daughter Lindsey M. Schulz, filed

a complaint against Arbors in the Summit County Court of Common Pleas. The complaint included claims of negligence, recklessness, willful and wanton conduct, and intentional conduct. The complaint further alleged that Mr. Barker suffered serious and permanent injuries while he was a patient at Arbors at Stow.

{¶3} When Mr. Barker was admitted to Arbors at Stow in March 2023 for skilled nursing care, his guardian of person Ms. Schulz e-signed a stand-alone alternative dispute resolution agreement ("arbitration agreement") purportedly on his behalf. Mr. Barker's guardian of estate did not sign the arbitration agreement, although the guardian of estate signed other paperwork related to his admission to Arbors at Stow. The arbitration agreement provided in part:

> This . . . Agreement . . . demonstrates mutual intention of the undersigned parties to resolve disputes between them outside of court and the parties agree to submit their disputes to "Alternative Dispute Resolution" or "ADR" through mediation and/or arbitration.

{¶4} The scope of the disputes covered by the agreement included any claim for relief "arising from or relating in any way to . . . [Mr. Barker's] stay at [Arbors at Stow] where the amount in controversy exceeds $50,000[.]" These claims included claims for negligence, tort claims, medical malpractice claims, claims for breach of statutory duties or the resident's rights, and claims for departures of accepted standards of care. Lindsey Schulz electronically signed the agreement as "Responsible Party," indicating she was "Guardian of Person."

{¶5} The arbitration agreement also stated, "[t]his is a voluntary agreement and you have the right to not sign this agreement. Execution of the [arbitration agreement] is NOT required for [Mr. Barker] to obtain any service from the facility." (Emphasis in original.)

{¶6} Arbors filed a motion to stay the trial court proceedings and enforce the arbitration agreement. Mr. Barker opposed the motion, arguing the guardian of his person did not have the authority to enter into the arbitration agreement on his behalf. The trial court denied Arbors'

motion to stay and to enforce the arbitration agreement, stating in part: "[R.C.] 2111.13 does not authorize a guardian of the person to bring a lawsuit or to waive or alter a ward's interests in a lawsuit."

{¶7}    Arbors has appealed, raising one assignment of error for our review.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY NOT STAYING THE ENTIRE MATTER PENDING COMPLETE ARBITRATION OF ALL CLAIMS ARBITRABLE AS REQUIRED BY R.C. 2711.02.**

{¶8}    Appellants argue in their assignment of error the trial court erred by not staying the proceedings in the trial court and by not compelling arbitration.  They specifically argue that as guardian of the person, Ms. Schulz had the actual authority to execute the arbitration agreement on behalf of Mr. Barker, and if she did not have actual authority, she had the apparent authority to do so.  Mr. Barker argues his guardian of person did not have the actual or apparent authority to execute the arbitration agreement on his behalf.  We agree.

{¶9}    Arbitration is strongly favored as a method to settle disputes. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998).  Ohio courts recognize a presumption for arbitration when the claim in dispute falls within the scope of the arbitration agreement.  *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 27.  In spite of this presumption, because an arbitration agreement is a contract, there must be a valid contract.  "[B]efore a party may be bound by the terms of an arbitration agreement, there must in fact be a contract which requires the arbitration of the parties' disputes and claims." *Koch v. Keystone Pointe Health & Rehabilitation*, 2012-Ohio-5817, ¶ 9 (9th Dist**.).**  One aspect of this analysis is whether the party against whom the arbitration agreement is to be enforced had the actual or apparent authority to execute the contract.  *See Jones v. Brentwood Health Center,* 2023-Ohio-1655*,* ¶ 6 (9th Dist.), citing *Koch* at ¶ 9-14.  Whether or not a contract

exists is a question of law that this Court reviews de novo. *McFadden v. Charter Communications, Inc.,* 2024-Ohio-4564, ¶ 11 (9th Dist.), citing *Gustinski v. Copley Health Center,* 2021-Ohio-4282, ¶ 9 (9th Dist.).

**Actual Authority**

{¶10} In order to determine whether the guardian of Mr. Barker's person had the actual authority to execute the arbitration agreement, we must look at the Ohio statutes governing guardianships. Guardianships of incompetents are governed by R.C. Chapter 2111. The duties of guardians of incompetents are set forth in R.C. 2111.13 for guardians of the person, and R.C. 2111.14 for guardians of the estate.

{¶11} R.C. 2111.13, which sets forth the duties of guardian of the person, provides in relevant part:

(A) When a guardian is appointed to have the custody and maintenance of a ward, . . . the guardian's duties are as follows:

(1) To protect and control the person of the ward;

(2) To provide suitable maintenance for the ward when necessary, which shall be paid out of the estate of such ward upon the order of the guardian of the person;

. . .

(C) A guardian of the person may authorize or approve the provision to the ward of medical, health, or other professional care, counsel, treatment, or services[.]

{¶12} R.C. 2111.14 provides that the duties of a guardian of a ward's estate include paying debts owed by the ward, collecting debts due to the ward, defending lawsuits brought against the ward, and bringing lawsuits on behalf of the ward. Entering contracts on behalf of a ward is not a duty explicitly set forth in either R.C. 2111.13 or R.C. 2111.14. However, in order to carry out their statutory obligations, guardians may be required to enter into written contracts or agreements on behalf of their wards. For example, guardians of the person may be required to sign contracts

with health care facilities or professional care providers to "authorize or approve the provision" of care, maintenance, or protection of the ward. Therefore, pursuant to R.C. 2111.13, a guardian of the person is authorized to contract for the care, maintenance, or protection of the ward. Similarly, guardians of the estate may be required to enter into contracts to carry out their duties, such as contracting with legal counsel, with the approval of the probate court, to initiate or defend a lawsuit. *See, e.g., In re Guardianship of Jadwisiak,* 64 Ohio St.3d 176, 180, citing *In re Wonderly*, 10 Ohio St.3d 40, 43 (1984).

{¶13} Here, the arbitration agreement was signed in connection with Mr. Barker's admission to Arbors at Stow, but the arbitration agreement itself was not an agreement for the care, maintenance, or protection of Mr. Barker. It was an agreement to utilize arbitration and/or mediation to resolve legal claims arising out of that care, maintenance, or protection. Pursuing and resolving legal claims on behalf of a ward falls squarely within the duties of the guardian of the estate pursuant to R.C. 2111.14. In addition, execution of the arbitration agreement was not required for Mr. Barker to receive care from the facility. Thus, the arbitration agreement is not the type of agreement a guardian of the person is authorized to execute on the ward's behalf pursuant to R.C. 2111.13.

{¶14} In *Primmer v. Healthcare Indus. Corp.,* 2015-Ohio-4104 (4th Dist.), the court held that a healthcare power-of-attorney did not authorize the agent to execute an alternative dispute resolution agreement on behalf of the principal, because the agent only had the authority to make decisions regarding, "care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition or physical or mental health." *Id.* at ¶ 16. While not identical to this case, the case is nevertheless instructive. In *Primmer*, the language of the healthcare power-of-attorney document set forth the authorized actions of the agent. Here, R.C.

2111.13 sets forth the duties of a guardian of person, which are to authorize medical, health, or other professional care, counsel, treatment, or services to the ward. While the arbitration agreement at issue here concerned *claims* "arising from or related in any way to" Mr. Barker's care, the arbitration agreement itself does not authorize the *provision of care* to Mr. Barker, and execution of the agreement was not required for Mr. Barker to receive care. The "decision to sign a free-standing arbitration agreement is not a health care decision if the patient may receive health care without signing the arbitration agreement." *Id* at ¶ 19.

{¶15} Because executing the arbitration agreement was not a duty of the guardian of Mr. Barker's person authorized by R.C. 2111.13, the guardian of person did not have actual authority to bind Mr. Barker to arbitration.

**Apparent Authority**

{¶16} Arbors argues that even if the guardian of person did not have actual authority to sign the arbitration agreement, she had the apparent authority to do so and they reasonably relied on that apparent authority. Prior to his admission to Arbors at Stow, Mr. Barker had been deemed incompetent by the Summit County Probate Court and the probate court had appointed guardians of person and estate for him. R.C. 2111.01(D)(1) defines "incompetent" as "[a]ny person who is so mentally impaired, as a result of a mental or physical illness or disability, as a result of intellectual disability, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property or fails to provide for the person's family or other persons for whom the person is charged by law to provide[.]" The duties of guardian of person and estate are prescribed by statute. R.C. 2111.50(A)(1) provides that the probate court is superior guardian of wards who are subject to its jurisdiction. Therefore, the authority to act on Mr. Barker's behalf lies with the guardians as set forth in the Letters of Guardianship issued by the

probate court, and the probate court itself as superior guardian. Arbors knew that Mr. Barker had guardians of both person and estate who had actual authority to act on Mr. Barker's behalf and Arbors could not reasonably rely on apparent authority. The Supreme Court of Ohio has stated:

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570 (1991), syllabus.

{¶17} Mr. Barker had been deemed incompetent and placed under guardianship prior to the execution of the arbitration agreement. Therefore, Mr. Barker could not have held his daughter out as having the authority to execute the agreement on his behalf. And Arbors could not have had a good faith belief that Mr. Barker held his daughter out as having such authority, because Arbors knew he was under court-ordered guardianship.

{¶18} In addition, even if Ms. Shulz held herself out as having the authority to sign the arbitration agreement, "[i]n determining whether an agent is acting with apparent authority, the court must examine the *principal's* acts, and not the *agent's* acts." (Emphasis added) *McFarland v. Niekamp, Weisensell, Mutersbaugh & Mastrantonio, L.L.P.,* 2017-Ohio-8394, ¶ 18 (9th Dist.) citing *Master Consol. Corp.* at 576. As stated above, Mr. Barker could not have held his daughter out as having the authority to sign the agreement because he was under guardianship at the time, and Arbors knew it.

{¶19} Because Ms. Shulz did not have the actual or apparent authority as guardian of Mr. Barker's person to execute the arbitration agreement on behalf of Mr. Barker, there was no

enforceable contract for arbitration, and the trial court did not err in denying the motion to stay proceedings and compel arbitration.

{¶20}  Accordingly, Appellants' assignment of error is overruled.

III.

{¶21}  For the reasons set forth above, Appellants' assignment of error is overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

LESLIE M. JENNY, Attorney at Law, for Appellants.

WILLIAM P. CAMPBELL, Attorney at Law, for Appellee.